LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiffs, FLSA Collective Plaintiffs*
*and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

JOHN ROSARIO,
LUCAS CARRERA, and
MARIO ALVAREZ,
*on behalf of themselves, FLSA Collective Plaintiffs*
*and the Class*,

       Plaintiffs,

       v.

EMZ SOLUTIONS LLC,
[FNU] ROSS,
YAAKOV ROTH, and
EDDIE [LNU],

       Defendants.

---

Case No.:

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**

Jury Trial Demanded

---

Plaintiffs, JOHN ROSARIO, LUCASE CARRERA, and MARIO ALVAREZ ("Plaintiffs"), on behalf of themselves and others similarly situated, by and through their undersigned attorneys, hereby file this Class and Collective Action Complaint against Defendants, EMZ SOLUTIONS LLC, (the "Corporate Defendant"), [FNU] ("First Name Unknown") ROSS, YAAKOV ROTH, and EDDIE [LNU] ("Last Name Unknown") (collectively, the "Individual Defendants," and together with Corporate Defendant, "Defendants"), and state as follows:

## INTRODUCTION

1.      Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that they and others similarly situated are entitled to recover from Defendants: (1) unpaid wages due to time-shaving, (2) liquidated damages and (3) attorneys' fees and costs.

2.      Plaintiffs further allege, pursuant to the New York Labor Law ("NYLL"), that they and others similarly situated are entitled to recover from Defendants: (1) unpaid wages due to time-shaving, (2) statutory penalties, (3) liquidated damages, and (4) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

4.      Venue is proper in the Eastern District pursuant to 28 U.S.C. § 1391.

## PARTIES

5.      Plaintiff, JOHN ROSARIO, is a resident of Kings County, New York.

6.      Plaintiff, LUCAS CARRERA, is a resident of Kings County, New York.

7.      Plaintiff, MARIO ALVAREZ, is a resident of Bronx County, New York.

8.      Defendants currently operate a construction business under the tradename "EMZ Solutions." Prior to in or around 2015, Defendants operated their construction business through the corporate entity, RUSSO CONSTRUCTION LLC, which was a domestic limited liability company organized under the laws of New York with a principal place of business and address for service of process located at 375 Johnson Avenue, Brooklyn, New York 11201. RUSSO CONSTRUCTION LLC operated as the former business entity that employed Plaintiffs and is a

predecessor company to Corporate Defendant EMZ SOLUTIONS LLC. RUSSO CONSTRUCTION LLC dissolved on or about July 8, 2016.

9.      Corporate Defendant EMZ SOLUTIONS LLC is a domestic limited liability company organized under the laws of New York with a principal place of business located at 375 Johnson Avenue, Brooklyn, New York 11201, and an address for service of process located at c/o The Limited Liability Company, 528 Fairway Drive, Woodmere, New York 11598. Corporate Defendant EMZ SOLUTIONS LLC is a successor in interest to RUSSO CONSTRUCTION LLC as it continues to operate the same business as its predecessor (i) at the same location; (ii) using the same workforce; (iii) using the same supervisory personnel; and (iv) the same jobs exist under substantially the same working conditions. EMZ SOLUTIONS LLC continues to be owned and operated by the same Individual Defendants that owned and operated RUSSO CONSTRUCTION LLC.

10.      Corporate Defendant EMZ SOLUTIONS LLC and its predecessor company were and is owned and operated by three related individuals. Individual Defendant [FNU] ROSS, who was known by employees as Mr. Ross, was the father. Individual Defendant YAAKOV ROTH is [FNU] ROSS's son. Lastly, Individual Defendant EDDIE [LNU], who was known by employees as Mr. Eddie, was [FNU] ROSS's son-in-law.

11.      Individual Defendant [FNU] ROSS is an owner and/or Executive Officer of Corporate Defendant EMZ SOLUTIONS LLC. [FNU] ROSS exercised control over the employment terms and conditions of Plaintiffs, FLSA Collective Plaintiffs and Class members. [FNU] ROSS had and exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of Plaintiffs, FLSA Collective Plaintiffs and Class members. At all times,

employees could complain to [FNU] ROSS regarding any of the terms of their employment, and [FNU] ROSS would have the authority to effect any changes to the quality and terms of employees' employment. [FNU] ROSS ensured that employees effectively perform their duties and that the business is operating efficiently and profitably. [FNU] ROSS exercised functional control over the business and financial operations of Corporate Defendant EMZ SOLUTIONS LLC. [FNU] ROSS had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs and Class members and could reprimand employees.

12.    Individual Defendant YAAKOV ROTH is an owner and/or Executive Officer of Corporate Defendant EMZ SOLUTIONS LLC. YAAKOV ROTH exercised control over the employment terms and conditions of Plaintiffs, FLSA Collective Plaintiffs and Class members. YAAKOV ROTH had and exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of Plaintiffs, FLSA Collective Plaintiffs and Class members. At all times, employees could complain to YAAKOV ROTH regarding any of the terms of their employment, and YAAKOV ROTH would have the authority to effect any changes to the quality and terms of employees' employment. YAAKOV ROTH ensured that employees effectively perform their duties and that the business is operating efficiently and profitably. YAAKOV ROTH exercised functional control over the business and financial operations of Corporate Defendant EMZ SOLUTIONS LLC. YAAKOV ROTH had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs and Class members and could reprimand employees.

13.    Individual Defendant EDDIE [LNU] is an owner and/or Executive Officer of Corporate Defendant EMZ SOLUTIONS LLC. EDDIE [LNU] exercised control over the

employment terms and conditions of Plaintiffs, FLSA Collective Plaintiffs and Class members. EDDIE [LNU] had and exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of Plaintiffs, FLSA Collective Plaintiffs and Class members. At all times, employees could complain to EDDIE [LNU] regarding any of the terms of their employment, and EDDIE [LNU] would have the authority to effect any changes to the quality and terms of employees' employment. EDDIE [LNU] ensured that employees effectively perform their duties and that the business is operating efficiently and profitably. EDDIE [LNU] exercised functional control over the business and financial operations of Corporate Defendant EMZ SOLUTIONS LLC. EDDIE [LNU] had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs and Class members and could reprimand employees

14.     At all relevant times, the Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA.

15.     At all relevant times, the work performed by Plaintiffs were directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

16.     Plaintiffs bring claims for relief as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of all non-exempt construction workers employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

17.     At all relevant times, Plaintiffs and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices,

procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them for all hours worked due to time-shaving.

18.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

19.     Plaintiffs brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt construction workers employed by Defendants, on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

20.     All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned, the position held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

21.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number

are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

22.     Plaintiffs' claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants.  Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

23.     Plaintiffs are able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

24.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will

be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

25.     Defendants and other employers throughout New York State violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

26.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

    a)  Whether Defendants employed Plaintiffs and the Class members within the meaning of the New York law;

    b)  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiffs and the Class members properly;

c) At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiffs and the Class members for their work;

d) Whether Defendants paid Plaintiffs and Class members for all hours worked given Defendants' policy of time-shaving;

e) Whether Defendants paid Plaintiffs and the Class members proper overtime compensation for all hours worked over forty (40);

f) Whether Defendants provided proper wage statements informing Plaintiffs and the Class members of information required to be provided on wage statements as required under the New York Labor Law; and

g) Whether Defendants provided proper wage and hour notice to Plaintiffs and the Class members, pursuant to the requirements of the New York Labor Law.

## STATEMENT OF FACTS

### *John Rosario*

27. In or around January 2011, Plaintiff, JOHN ROSARIO, was hired by Defendants to work as a construction worker for Defendants' construction company, Russo Construction LLC. In or around 2015, Defendants changed the construction company to EMZ Solutions LLC. Plaintiff ROSARIO continued to work for Defendants until on or about January 31, 2018.

28. During Plaintiff JOHN ROSARIO's employment with Defendants, he regularly worked over forty (40) hours per workweek. Specifically, from in or around January 2012 until on or about January 31, 2018, Plaintiff JOHN ROSARIO was scheduled to work five (5) days per week: from 7:00 a.m. to 4:00 p.m. for four (4) days of the week and from 7:00 a.m. to 2:00

p.m. for one (1) day of the week; for a total of forty-three (43) hours per week, without any lunch break. At all times, Plaintiff ROSARIO was required to eat while working.

29.     From in or around January 2012 through December 2015, Plaintiff JOHN ROSARIO's regular rate of pay was $9.50 per hour. In 2016, Plaintiff ROSARIO's regular rate of pay was $13.00 per hour and his overtime rate of pay was $19.50 per hour. From in or around January 2017 through May 2017, Plaintiff ROSARIO's regular rate of pay was $14.50 per hour and his overtime rate of pay was $21.76 per hour. From in or around June 2017 until the end of his employment, Plaintiff ROSARIO's regular rate of pay was $16.00 per hour and his overtime rate of pay was $24.00 per hour.

*__Lucas Carrera__*

30.     In or around January 2004, Plaintiff, LUCAS CARRERA, was hired by Defendants to work as a construction worker for Defendants' construction company, Russo Construction LLC. In or around 2015, Defendants changed the construction company to EMZ Solutions LLC. Plaintiff CARRERA continued to work for Defendants until on or about January 31, 2018.

31.     During Plaintiff LUCAS CARRERA's employment with Defendants, he regularly worked over forty (40) hours per workweek. Specifically, from in or around January 2012 until on or about January 31, 2018, Plaintiff CARRERA was scheduled to work five (5) days per week: from 7:00 a.m. to 4:00 p.m. for four (4) days of the week and from 7:00 a.m. to 2:00 p.m. for one (1) day of the week; for a total of forty-three (43) hours per week, without any lunch break. At all times, Plaintiff CARRERA was required to eat while working.

32.     From in or around January 2012 through December 2015, Plaintiff LUCAS CARRERA's regular rate of pay was $9.00 per hour. In 2016, Plaintiff CARRERA's regular rate

of pay was $13.00 per hour and his overtime rate of pay was $19.50 per hour. From in or around January 2017 through May 2017, Plaintiff CARRERA's regular rate of pay was $14.50 per hour and his overtime rate of pay was $21.76 per hour. From in or around June 2017 until the end of his employment, Plaintiff CARRERA's regular rate of pay was $15.00 per hour and his overtime rate of pay was $22.50 per hour.

**_Mario Alvarez_**

33.    In or around January 2004, Plaintiff, MARIO ALVAREZ, was hired by Defendants to work as a construction worker for Defendants' construction company, Russo Construction LLC. In or around 2015, Defendants changed the construction company to EMZ Solutions LLC. Plaintiff ALVAREZ continued to work for Defendants until on or about January 31, 2018.

34.    During Plaintiff MARIO ALVAREZ's employment with Defendants, he regularly worked over forty (40) hours per workweek. Specifically, from in or around January 2012 until on or about January 31, 2018, Plaintiff ALVAREZ was scheduled to work five (5) days per week: from 7:00 a.m. to 4:00 p.m. for four (4) days of the week and from 7:00 a.m. to 2:00 p.m. for one (1) day of the week; for a total of forty-three (43) hours per week, without any lunch break. At all times, Plaintiff ALVAREZ was required to eat while working.

35.    From in or around January 2012 through December 2013, Plaintiff MARIO ALVAREZ's regular rate of pay was $9.00 per hour. In or around 2014, Plaintiff ALVAREZ's regular rate of pay was $10.50 per hour and his overtime rate of pay was $15.76 per hour. In or around 2015, Plaintiff ALVAREZ's regular rate of pay was $12.50 per hour. In 2016, Plaintiff ALVAREZ's regular rate of pay was $14.00 per hour. From in or around January 2017 through May 2017, Plaintiff ALVAREZ's regular rate of pay was $14.50 per hour. From in or around

June 2017 until the end of his employment, Plaintiff ALVAREZ's regular rate of pay was $16.00 per hour.

36.    Based on Plaintiffs' direct observations and conversations with other employees, FLSA Collective Plaintiffs and Class members had similar work schedules and received similar hourly rates.

37.    Throughout their employment, Plaintiffs were regularly required to clock-in and clock-out by signing a sign-in and sign-out sheet at each job site. At all times, Plaintiffs suffered from Defendants' policy of time-shaving that improperly rounded the employees' daily hours worked down to the nearest half hour, and then paid wages only for those rounded hours instead of actual hours worked. Defendants rounded down Plaintiffs' hours worked to the nearest 30-minute interval. For example, when Plaintiffs worked nine (9) hours and twenty-nine (29) minutes on a particular workday, Defendants impermissibly rounded Plaintiffs' recorded hours down to nine (9) hours. This rounding policy resulted, over a period of time, in a systematic failure to compensate Plaintiffs and other employees the proper wages for all hours worked. *See Gordon v. Kaleida Health*, 299 F.R.D. 380, 405 (W.D.N.Y. 2014); *Canelas v. World Pizza Inc.*, No. 14 Civ. 7748, 2017 U.S. Dist. LEXIS 50615, *24-27 (S.D.N.Y. Mar. 31, 2017). As a result, Defendants failed to compensate Plaintiffs for approximately two-and-a-half (2.5) hours per week, at the overtime rate. FLSA Collective Plaintiffs and Class members similarly suffered from Defendants' impermissible rounding policy and failure to pay proper wages for all hours worked.

38.    During Plaintiffs' employment by Defendants, Defendants failed to pay Plaintiffs their proper wages, including those to be paid at time-and-a-half for hours worked over forty (40), due to Defendants' policy of time-shaving. FLSA Collective Plaintiffs and Class members

similarly suffered from Defendants' failure to pay overtime compensation for hours worked in excess of forty (40), due to time-shaving.

39.    Defendants knowingly and willfully operated their business with a policy of not providing proper wages statements, which did not reflect actual hours worked, to Plaintiffs and Class members as required under the New York Labor Law.

40.    Defendants knowingly and willfully failed to provide proper wage and hour notice to Plaintiffs and Class members pursuant to the requirements of the New York Labor Law.

41.    Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs, FLSA Collective Plaintiffs and Class members, in this litigation and has agreed to pay the firm a reasonable fee for its services.

**STATEMENT OF CLAIM**

**COUNT I**

**VIOLATION OF THE FAIR LABOR STANDARDS ACT**

42.    Plaintiffs reallege and reaver Paragraphs 1 through 41 of this Class and Collective Action Complaint as if fully set forth herein.

43.    At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).  Further, Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

44.    At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

45.    At all relevant times, the Corporate Defendant had gross annual revenues in excess of $500,000.

46.     At all relevant times, the Defendants had a policy and practice of refusing to pay Plaintiffs and FLSA Collective Plaintiffs for all of their hours worked due to Defendants' policy of time-shaving.

47.     Defendants failed to pay Plaintiffs and FLSA Collective Plaintiffs their wages in the lawful amount for their hours worked.

48.     At all relevant times, the Defendants had a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiffs and FLSA Collective Plaintiffs for their hours worked in excess of forty (40) hours per workweek.

49.     Defendants failed to pay Plaintiffs and FLSA Collective Plaintiffs overtime compensation in the lawful amount for hours worked in excess of the maximum hours provided for in the FLSA.

50.     Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs should be in the possession and custody of the Defendant. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

51.     Defendant knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and FLSA Collective Plaintiffs for all hours worked, and at the statutory rate of time and one-half for their hours worked in excess of forty (40) hours per week when Defendants knew or should have known such was due.

52.     Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

53.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e. double) damages pursuant to the FLSA.

54.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime wages due to time-shaving, plus an equal amount as liquidated damages.

55.     Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## <u>VIOLATION OF THE NEW YORK LABOR LAW</u>

56.     Plaintiff reallege and reaver Paragraphs 1 through 55 of this class and collective action Complaint as if fully set forth herein.

57.     At all relevant times, Plaintiffs and Class members were employed by the Defendants within the meaning of the New York Labor Law §§ 2 and 651.

58.     Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay them their proper wages for all hours worked, including their overtime compensation at the rate of not less than one and one-half times the regular rate of pay for their hours worked in excess of forty (40) hours in a workweek.

59.     Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay Plaintiffs wages in the lawful amount for hours worked due to time-shaving.

60.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the New York Labor Law.

61.    Defendants knowingly and willfully failed to provide proper wage and hour notices to employees pursuant to the requirements of the New York Labor Law.

62.    Due to the Defendants' New York Labor Law violations, Plaintiffs and Class members are entitled to recover from Defendants unpaid compensation, including those at a rate of time-and-a-half for overtime hours worked, damages for unreasonably delayed payments, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to New York Labor Law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Plaintiffs and Class members, respectfully requests that this Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

b.  An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  An award of unpaid overtime compensation due under the FLSA and NYLL;

d.  An award of unpaid wages due under the FLSA and NYLL due to Defendants' policy of time-shaving;

e.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation and wages pursuant to the FLSA;

f.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation and wages pursuant to the NYLL;

g. An award of prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

h. Designation of Plaintiffs as the Representative of the FLSA Collective Plaintiffs;

i. Designation of this action as a class action pursuant to F.R.C.P. 23;

j. Designation of Plaintiffs as Representative of Class; and

k. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

Dated: June 5, 2018

Respectfully submitted,

LEE LITIGATION GROUP, PLLC

C.K. Lee (CL 4086)
Anne Seelig (AS 1976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs, FLSA Collective Plaintiffs and the Class*

By:   */s/ C.K. Lee*
      C.K. Lee, Esq.