UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JOHN ROSARIO, *et al.*,

               Plaintiffs,

         -against-

EMZ SOLUTIONS LLC, *et al.*,

               Defendants.
------------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**
18 CV 3297 (FB) (CLP)

**POLLAK**, United States Magistrate Judge:

On June 5, 2018, plaintiffs John Rosario, Lucas Carrera, and Mario Alvarez ("Named plaintiffs") commenced this class and collective action on behalf of themselves and other similarly situated employees against EMZ Solutions LLC, Arnold Roth, Yaakov Roth and Edward Forkash (collectively, "defendants"), seeking damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206(a), 207(a), and 216(b), and the New York Labor Law ("NYLL") § 190 et seq. and § 650 et seq., for unpaid wages, due to a policy of time shaving, and for violations of the requirements to provide wage notices and accurate wage statements under Sections 195(1) and 195(3) of the NYLL.  (See generally Compl.).[1]

On May 29, 2019, the parties indicated that they had reached a proposed settlement and filed a motion with the court requesting an Order granting preliminary approval of the proposed settlement as set forth in the Settlement Agreement and Release (the "Agreement").  (See Sett. Agr.).[2]  The motion was referred to the undersigned to prepare a Report and Recommendation.

For the reasons set forth below, the Court respectfully recommends that the district court

---

[1] Citations to "Compl." refer to plaintiffs' Complaint, filed on June 5, 2018, ECF No. 1.
[2] Citations to "Sett. Agr." refer to the original Settlement Agreement, filed May 29, 2019, as Exhibit A to the Affidavit in Support of Motion for Preliminary Approval of Class Settlement, ECF No. 35-1.

deny the motion, without prejudice to renew, and allow the parties to supplement their papers in light of the concerns raised herein.

## FACTUAL BACKGROUND

The relevant facts underlying this class and collective action are drawn from the Complaint, dated June 5, 2018.  As set forth therein, the defendants employed plaintiffs and other similarly situated employees as construction workers.  (Compl. ¶¶ 16, 22, 30, 33). Plaintiffs allege that defendants did not pay them proper wages due to a policy of time shaving. (Id. ¶¶ 37, 38).  They also assert that they were never paid spread of hour wages nor did they receive the requisite wage notices or wage statements as the NYLL requires.  (Id. ¶¶ 39, 40).

On February 28, 2019, the parties attended a full-day in-person mediation with a mediator, Raymond Nardo, Esq., a member of the E.D.N.Y. mediation program, and reached an agreement as to the principal terms of the settlement.  (See 3/7/2019 Ltr.).[3]  Plaintiffs then filed the instant motion seeking preliminary approval of the class action settlement and release, conditional certification of the class for settlement purposes, appointment of class counsel, appointment of Advanced Litigation Strategies, LLC as Claims Administrator, and approval of the proposed Notice of settlement.  (See Mot.).[4]

Pursuant to the proposed Settlement Agreement reached between the parties, the defendants will fund a settlement in the total amount of $200,000, to cover damages owed

---

[3] Citations to "3/7/2019 Ltr." refer to a joint letter from the parties informing the court of the mediation and settlement in principal, ECF No. 28.

[4] Citations to "Mot." refer to the Notice of Plaintiffs' Motion for An Order (1) Conditionally Certifying Settlement Class and Collective Action, (2) Granting Preliminary Approval to Proposed Class Action Settlement and Plan of Allocation, (3) Directing Dissemination of Notice and Related Material to the Class, and (4) Setting Date for Fairness Hearing and Related Dates, ECF No. 33, dated May 29, 2019.

approximately to 100 hourly construction workers employed by defendants for the period from June 5, 2010 to February 28, 2019 (the "Class"). (Pls.' Mem. at 3).[5]  In addition, defendants agree to pay the employer's share of state and federal payroll taxes with respect to amounts treated as wages. (Id.)

Pursuant to the proposed Settlement Agreement, the Claims Administrator will send the Proposed Notice ("Notice"[6]) to the last known home address of each Class Member within thirty (30) days of the date of an Order granting preliminary approval. (Id. at 4).  The Notice gives Class Members thirty days from the initial mailing to exclude themselves or object to the settlement. (Id.)  Those Class Members who do not object or opt out will receive a settlement check in an amount to be determined by the Claims Administrator that is "proportional to the duration of his or her employment during the class period." (Id.)  Class Members who deposit, endorse or cash their checks will release their FLSA claims. (Id.)  Each settlement check will contain the following language:

> RELEASE OF CLAIMS:  By my endorsement of this check and accepting payment, I opt into the lawsuit E.D.N.Y. 18-cv-3297, consent to join the Fair Labor Standards Act collective action in this lawsuit, and release all of my claims as described in the Settlement Agreement, and in the Notice in this lawsuit.

(Id.)  Any funds remaining from uncashed checks will be applied to a second-round distribution to the Class Members who cashed their initial checks or be applied to a *cy pres* donation "as determined by [p]laintiffs' counsel." (Id. at 5)

---

[5] Citations to "Pls.' Mem." refer to Plaintiff's Memorandum in Support of Motion for Preliminary Approval of Class Settlement, dated May 29, 2019, ECF No. 34.

[6] The proposed Notice is attached as Exhibit B to ECF No. 35, filed May 29, 2019.

Plaintiffs' counsel indicate that, pursuant to Fed. R. Civ. P. 23(h) and 54(d)(2), they will seek an award of attorneys' fees of $66,666, plus costs and expenses. (Id.)  The motion for fees, which Counsel will file at a later date, is not opposed by defendants. (Id.)  Plaintiffs will also seek service awards for the three Named Plaintiffs in the amount of $10,000 each, for a total of $30,000. (Id.)  Finally, plaintiffs' counsel has retained Advanced Litigation Strategies, LLC[7] to act as Claims Administrator, responsible for mailing the Notice, calculating the individual settlement awards and tax withholdings, pay out the Settlement Fund, provide reports and answer Class Members' inquiries. (Id. at 6).  For these services, Advanced Litigation Strategies is to receive fees and expenses which the parties estimate to be $20,000. (Id.)

Based on a review of the documentation provided, the Court lacks the information necessary to evaluate the fairness of the amounts being awarded as part of the collective action settlement as required by Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015). In addition, there are other concerns raised by the procedures proposed for distribution of the settlement, as set forth below.  Accordingly, the Court respectfully recommends that the settlement not be approved at this time for the reasons set forth below.

## DISCUSSION

A. Standards for Certifying a Rule 23 Class

Before examining the settlement, the Court must consider whether to certify the Class for settlement purposes.  Rule 23(a) of the Federal Rules of Civil Procedure governs class certification, providing:

---

[7] As noted in this Court's Order in Chen v. XpresSpa, No. 15 CV 1347, 2019 WL 5792315, at *4 n. 9 (E.D.N.Y. August 20, 2019), Advanced Litigation Strategies, LLC is under common control of the Lee Litigation Group, PLLC, counsel for plaintiffs in this case.

4

> One or more members of a class may sue or be sued as
> representative parties on behalf of all members only if: (1) the
> class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class; (3) the
> claims or defenses of the representative parties are typical of the
> claims or defenses of the class; and (4) the representative parties
> will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In addition to satisfying these prerequisites, plaintiffs also must satisfy one of the three

subdivisions of Rule 23(b): (1) that separate actions pose a risk of inconsistent adjudications or

would substantially impair the ability of other individuals to protect their interests; (2) injunctive

or declaratory relief is sought concerning the class as a whole; or (3) common questions of law

or fact predominate over individual questions, and a class action is superior to other methods for

bringing suit. Fed. R. Civ. P. 23(b). See generally Amchem Prods., Inc. v. Windsor, 521 U.S.

591, 614 (1997); Annunziato v. Collecto, Inc., 293 F.R.D. 329, 334 (E.D.N.Y. 2013). It is

plaintiffs' burden to establish compliance with each of the requirements of Rule 23 by a

preponderance of the evidence, In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108, 117 (2d

Cir. 2013), but in analyzing the issue of certification, the court accepts as true the allegations in

the complaint regarding the merits of the claim. See D'Alauro v. GC Servs. Ltd. P'ship, 168

F.R.D. 451, 454 (E.D.N.Y. 1996) (citation omitted). While courts are required to conduct a

"rigorous" analysis, Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 465-66 (2013),

the court may exercise "broad discretion" and "take a liberal rather than a restrictive approach"

when reviewing whether to certify a class. Annunziato v. Collecto, Inc., 293 F.R.D. at 334.

Pursuant to Rule 23(c)(1) of the Federal Rules of Civil Procedure, "the court can make a

conditional determination of whether an action should be maintained as a class action, subject to

final approval at a later date." Collier v. Montgomery Cty Hous. Auth., 192 F.R.D. 176, 181
(E.D. Pa. 2000).

For purposes of settlement only, defendants here do not oppose conditional certification
of the Rule 23 Class.  (See Pls.' Mem. at 14); see also Pickett v. Simos Insourcing Sols., Corp.,
249 F. Supp. 3d 897, 899 (N.D. Ill. 2017) (providing "[w]hen the court has not yet entered a
formal order determining that the action may be maintained as a class action, the parties may
stipulate that it be maintained as a class action for the purpose of settlement only") (internal
quotations omitted).

1.   The Requirements of Rule 23(a)

(a) Numerosity

Turning to the Rule 23(a) factors, the court may certify a class only if the class is so
numerous that joinder becomes impractical. Fed. R. Civ. P. 23(a)(1).  The standard for
presuming numerosity is forty or more members. Consol. Rail Corp. v. Town of Hyde Park, 47
F.3d 473, 483 (2d Cir. 1995).

In this case, defendants employed up to 100 construction workers, which is more than
sufficient for numerosity.  (Pls.' Mem. at 14, 15).  Thus, the allegations in the Complaint clearly
satisfy the standard of numerosity.

(b) Commonality

In determining whether plaintiffs can show that the claims of the potential Rule 23 Class
Members share common questions of law or fact, the Rule does not require that "'all questions of
law or fact raised be common.'" Savino v. Computer Credit, Inc., 173 F.R.D. 346, 352
(E.D.N.Y. 1997) (emphasis in original) (quoting Halford v. Goodyear Tire & Rubber Co., 161
F.R.D. 13, 18 (W.D.N.Y. 1995)).  As long as "common questions . . . predominate," any

6

differences in the circumstances raised by individual members will not defeat the requirement of commonality.  In re Sadia, S.A. Sec. Litig., 269 F.R.D. 298, 304 (S.D.N.Y. 2010).  In other words, "there need only be a single issue common to all members of the class," as the "critical inquiry is whether the common questions lay at the 'core' of the cause of action alleged."  Savino v. Computer Credit, Inc., 173 F.R.D. at 352.

Here, plaintiffs assert that there are several common legal and factual issues.  The Named Plaintiffs and proposed Class Members all assert that, as a result of a policy of time shaving, defendants failed to pay them the proper wages.  (Pls.' Mem. at 15).  In addition, plaintiffs allege that defendants failed to provide all non-exempt employees with wage statements and wage notices as required by New York law.  (Id.)  Other common issues include whether defendants employed plaintiffs and members of the Class within the meaning of New York and federal law, and the nature of defendants' practices and policies relating to the type of work for which plaintiffs were not paid properly.  (Id.)

These types of practices have been found to be sufficient to meet the commonality requirement of Rule 23.  See Campos v. Goode, No. 10 CV 224, 2010 WL 5508100, at *1-2 (S.D.N.Y. Nov. 29, 2010); deMunecas v. Bold Food LLC, No. 09 CV 0440, 2010 WL 2399345, at *1 (S.D.N.Y. Apr. 19, 2010).

As such, the Court finds that there are common legal and factual issues sufficient to satisfy the requirements of Rule 23(a)(2).

(c) Typicality

Rule 23(a)(3) requires that the lead plaintiffs' claims be typical of the claims of the class.  Typicality has been found "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."

7

Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993). Typicality is "usually met irrespective of varying fact patterns which underlie individual claims" so long as the claims of the class representative are typical of the class members' claims. Bourlas v. Davis Law Assocs., 237 F.R.D. 345, 351 (E.D.N.Y. 2006) (quoting D'Alauro v. GC Servs. Ltd. P'ship, 168 F.R.D. at 456-57).

Here, the claims of the Named Plaintiffs satisfy the requirements of the Rule in that they, like other members of the proposed Class, allege claims based on the same legal and factual circumstances that form the bases of the Class Members' claims. Specifically, plaintiffs allege that defendants: (1) failed to pay them the proper wages; and 2) failed to provide them with wage statements and wage notices as required by New York law. (Pls.' Mem. at 15). Plaintiffs' claims are therefore sufficiently typical to warrant certification.

(d) Adequacy of Representation

In order to satisfy Rule 23(a)(4), which requires the interests of the class to be adequately represented, the Second Circuit has established a two-prong test. See In re Drexel Burnham Lambert Grp., 960 F.2d 285, 291 (2d Cir. 1992). First, there must be a showing that class counsel is "'qualified, experienced and generally able' to conduct the litigation." Halford v. Goodyear Tire & Rubber Co., 161 F.R.D. at 19 (quoting Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 562 (2d Cir. 1968), vacated on other grounds, 417 U.S. 156 (1974)). Second, the Class Members' interests may not be "antagonistic" to one another. County of Suffolk v. Long Island Lighting Co., 710 F. Supp. 1407, 1413 (E.D.N.Y. 1989), aff'd, 907 F.2d 1295 (2d Cir. 1990).

Pursuant to Fed. R. Civ. P. 23(g), the Court must assess the adequacy of proposed class counsel, looking to the work counsel has done in identifying and investigating the potential claims, counsel's experience in handling class actions and claims of the type at issue in the case,

and counsel's knowledge of the applicable law.  See Fogarazzo v. Lehman Bros., Inc., 232

F.R.D. 176, 182 (S.D.N.Y. 2005); see also In re Fuwei Films Sec. Litig., 247 F.R.D. 432, 436

(S.D.N.Y. 2008) (stating:  "'(1) there should be no conflict between the interests of the class and

the named plaintiff nor should there be collusion among the litigants; and (2) the parties'

attorney must be qualified, experienced, and generally able to conduct the proposed litigation'")

(quoting Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., 229

F.R.D. 395, 412-13 (S.D.N.Y. 2004)); Babcock v. Computer Assocs. Int'l, Inc., 212 F.R.D. 126,

131 (E.D.N.Y. 2003) (citing In re Drexel Burnham Lambert Grp., Inc., 960 F.2d at 291).  The

Court should also consider the resources that counsel is able to commit in representing the Class.

     Here, the proposed Class has been represented by the Lee Litigation Group, PLLC.  (Lee

Decl. ¶¶ 1, 2).[8]  Plaintiffs' counsel, C.K. Lee, represents that the lawyers in his firm have had

"substantial experience" in prosecuting and settling wage and hour class actions and that the firm

has previously been found to be adequate and appointed as class counsel in similar class actions.

(Pls.' Mem. at 20).  He cites nine cases in which he has been appointed as class counsel since

2012.  (Lee Decl. ¶¶ 7).

     Having considered counsel's submissions, and the amount of work done in connection

with this proposed settlement, the Court respectfully recommends that counsel be approved as

Class Counsel in this case.

     As for the second part of the analysis, there do not appear to be any conflicts between the

Named Plaintiffs and the other members of the Rule 23 Class.  The Named Plaintiffs do not

appear to have any interests that are antagonistic to or at odds with those of the Class Members,

---

[8] Citations to "Lee Decl." refer to the Affidavit/Declaration of C.K. Lee, Esq., in Support of Motion for Preliminarily Approval of Class Settlement, dated May 29, 2019, ECF No. 35.

and their interests appear to be aligned with those of the other Class Members. (Pls.' Mem. at 16-17).

For a potential or actual conflict to defeat certification, it must be "fundamental." In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29, 36 (2d Cir. 2009) (internal quotation marks and citations omitted). There is no evidence that the interests of the Named Plaintiffs are fundamentally antagonistic to those of the Class Members, and the Court is unaware of any potential, fundamental conflict of interest between plaintiffs and the Class Members. (See Pls.' Mem. at 16-17). Based on the nature of plaintiffs' claims, the Court finds that the Named Plaintiffs' claims are so interrelated with those of the other potential Rule 23 Class Members that they will be adequate class representatives.

2. The Requirements of Rule 23(b)(3)

(a) Common Questions Predominate Over Individual Issues

Plaintiffs must also establish that the proposed class meets the requirements of Fed. R. Civ. P. 23(b)(3). Under Rule 23(b)(3), a proposed class must be sufficiently cohesive and common issues must predominate in order to warrant adjudication as a class. Amchem Prods, Inc. v. Windsor, 521 U.S. at 623. Courts focus on whether there are common questions related to liability. See Smilow v. Southwest Bell Mobile Sys. Inc., 323 F.3d 32, 40 (1st Cir. 2003); Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 372-73 (S.D.N.Y. 2007). Even if there are defenses that affect class members differently, that alone "does not compel a finding that individual issues predominate over common ones." In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 138 (2d Cir. 2001), overruled on other grounds, In re IPO Secs. Litig., 471

10

F.3d 24 (2d Cir. 2006), (quoting Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 296

(1st Cir. 2000)).

In this case, plaintiffs allege that there are common issues as to defendants' policies that

predominate over any individual questions. (Pls.' Mem. at 17-18). While there may be

individualized issues of damages, the Court finds that common questions predominate in this

case and plaintiffs have therefore satisfied Rule 23(b)(3). See Torres v. Gristede's Corp., No. 04

CV 3316, 2006 WL 2819730, at *16 (S.D.N.Y. Apr. 9, 2010).

(b)  Class Action as Superior Method of Resolution

Additionally, to satisfy Rule 23(b)(3), plaintiffs must demonstrate that "a class action

would achieve economies of time, effort, and expense, and promote uniformity of decision as to

persons similarly situated, without sacrificing procedural fairness or bringing about other

undesirable results." Brown v. Kelly, 609 F.3d 467, 483 (2d Cir. 2010) (citation and internal

quotation marks omitted). The Rule requires the Court to consider:

> [(1)] the class members' interests in individually controlling the
> prosecution or defense of separate actions; [(2)] the extent and
> nature of any litigation concerning the controversy already begun
> by or against class members; [(3)] the desirability or undesirability
> of concentrating the litigation of the claims in the particular forum;
> and [(4)] the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Here, plaintiffs argue that the alternative to a settlement on a class basis would be the

"potential filing of hundreds[9] of individual actions." (Pls.' Mem. at 18). Moreover, given the

---

9 Though Plaintiffs' Memorandum states that there could be "hundreds" of individual
actions, the purported class contains "up to 100" members. (See Pls.' Mem. at 3).

expense and burden of individual litigation, and the small size of the individual time shaving claims, many members of the Class would find it financially impossible to individually redress the alleged harm done to them. (Id.) See Morris v. Affinity Health Plan, Inc., 859 F. Supp. 2d 611, 617 (S.D.N.Y. 2012). In addition, proceeding as a class will preserve judicial resources by consolidating common issues of fact and law, and avoid repetitive proceedings and inconsistent adjudications. See Aponte v. Comprehensive Health Mgmt, No. 10 CV 4825, 2011 U.S. Dist. LEXIS 60882, at *34 (S.D.N.Y. June 2, 2011). Thus, the Court accepts that a class action is the superior method of resolution in this case.

Having determined that the parties have satisfied the prerequisites for certifying a class under Rule 23, the Court must, as noted, also make a finding as to whether the proposed settlement is "fair, adequate, and reasonable, and not a product of collusion." Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000) (citations omitted); see Fed. R. Civ. P. 23(e).

B. Conditional Certification of the Collective Action

Before considering the fairness of the settlement to the Rule 23 Class, the Court notes that the proposed settlement here also encompasses the FLSA claims of the Class Members. In the Second Circuit, before a settlement and stipulation of dismissal relating to a plaintiff's FLSA claims may take effect, the parties must obtain approval of the settlement from the district court. See Cheeks v. Freeport Pancake House, Inc., 796 F.3d at 206. This requirement applies to both members of a class of individuals pursuing claims under the FLSA and individuals who are proceeding on their own. The requirement "is consistent with what both the Supreme Court and [the Second Circuit] have long recognized as the FLSA's underlying purpose: 'to extend the frontiers of social progress by insuring to all our able-bodied working men and women a fair

12

day's pay for a fair day's work.'" Id. (quoting A.H. Phillips, Inc. v. Walling, 324 U.S. 490, 493

(1945)).

In considering whether to approve an FLSA settlement, courts consider whether the

agreement "reflects a reasonable compromise of disputed issues [rather] than a mere waiver of

statutory rights brought about by an employer's overreaching." Le v. Sita Info. Networking

Computing USA, Inc., No. 07 CV 86, 2008 U.S. Dist. LEXIS 46174, at *2 (E.D.N.Y. June 12,

2008) (quoting Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1354 (11th Cir. 1982)

(holding that where an FLSA settlement is a reasonable compromise, the settlement should be

approved to "promote the policy of encouraging settlement of litigation")).

In Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012), the court set

forth factors that courts should consider in evaluating the fairness of a settlement in a collective

action.  The court made it clear that the proposed settlement should be evaluated in light of the

"totality of [the] circumstances," including the following factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to
> which the settlement will enable the parties to avoid anticipated
> burdens and expenses in establishing their respective claims and
> defenses; (3) the seriousness of the litigation risks faced by the
> parties; (4) whether the settlement agreement is the product of
> arm's-length bargaining between experienced counsel; and (5) the
> possibility of fraud or collusion.

Id. (internal citation and quotations omitted).  As with a Rule 23 class action, the Court must

make a preliminary determination as to whether there is a sufficient basis to grant conditional

certification of an FLSA collective.

Under the FLSA, the issue before the Court in determining whether to grant conditional

certification is whether the employees are "similarly situated."  29 U.S.C. § 216(b).  The

13

"similarly situated" standard is generally more permissive than the Rule 23 standard for

certification, at least during the conditional certification stage.  See Lynch v. United Servs.

Automobile Assoc., 491 F. Supp. 2d 357, 367-68 (S.D.N.Y. 2007).  The named plaintiffs must

simply show that "they and potential plaintiffs together were victims of a common policy or

plan that violated the law."  Contrera v. Langer, 278 F. Supp. 3d 702, 713 (S.D.N.Y. 2017)

(internal quotations omitted).

Here, plaintiffs have made the requisite showing to establish a basis for certification

under Rule 23.  Since plaintiffs have claimed that they and the Class Members were all subject

to the same improper wage policies due to time shaving and that they were all not provided

with the proper wage statements, plaintiffs have satisfied the minimal standard required to

warrant conditional certification of the FLSA § 216(b) class.  Thus, the only issue with respect

to both the Rule 23 Class and the Collective Members is whether the proposed settlement

agreement is fair and reasonable.

C.  Standards for Review of the Proposed Settlement

As noted in Chen v. XpresSpa, the Court, in conducting a fairness review under Rule 23

or under Cheeks, must engage in "'an information intensive undertaking, and the Parties must

provide the Court with enough information to evaluate the bona fides of the dispute.'"  No. 15

CV 1347, 2019 WL 5792315, at *19 (E.D.N.Y. August 20, 2019) (quoting Douglas v. Allied

Universal Security Servs., 371 F. Supp. 3d 78, 82 (E.D.N.Y.), reconsideration denied, 381 F.

Supp. 3d 239 (E.D.N.Y. 2019).  Plaintiffs argue that preliminary approval requires the court to

find only that there is "'probable cause to submit the settlement to class members and hold a

full-scale hearing as to its fairness.'"  (Pls.' Mem. at 8) (quoting Lizondro-Garcia v. Kefi LLC,

300 F.R.D. 169, 179 (S.D.N.Y. 2014) (internal citations omitted))).

Plaintiffs are correct that "[a] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." (Pls.' Mem. at 8 (quoting Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116 (2d Cir. 2005)). However, the Court must not only determine that the proposed settlement was procedurally "fair, adequate, and reasonable, and not a product of collusion." Joel A. v. Giuliani, 218 F.3d at 138 (citations omitted); see Fed. R. Civ. P. 23(e). The Court is also required to determine that the settlement was "achieved through arms-length negotiations by counsel with the experience and ability to effectively represent the class's interests." Becher v. Long Island Lighting Co., 64 F. Supp. 2d 174, 178 (E.D.N.Y. 1999) (citing Weinberger v. Kendrick, 698 F.2d 61, 74 (2d Cir. 1982)); see also D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001) (noting that the district court must "determine[] a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms"); In re Nissan Radiator/Transmission Cooler Litig., No. 10 CV 7493, 2013 WL 4080946, at *4 (S.D.N.Y. May 30, 2013). In reviewing a proposed settlement, the court has the "'fiduciary responsibility of ensuring that the settlement is . . . not a product of collusion, and that the class members' interests [were] represented adequately.'" Clement v. American Honda Fin. Corp., 176 F.R.D. 15, 29 (D. Conn. 1997) (internal quotations omitted).

For substantive fairness, the Second Circuit has enumerated nine factors to guide courts in evaluating a proposed settlement:

> (1) [T]he complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement; (3) the stage of the

proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]

City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted), abrogated on other grounds, Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000); see also D'Amato v. Deutsche Bank, 236 F.3d at 86; Garcia v. Pancho Villa's of Huntington Village, No. 09 CV 486, 2012 WL 5305694, at *4 (E.D.N.Y. Oct. 4, 2012).  Although the Court is not required to make a final finding of fairness as to the underlying settlement at this time, the Grinnell factors are instructive.  See Torres v. Gristede's Operating Corp., Nos. 04 CV 3316, 08 CV 8531, 08 CV 9627, 2010 WL 2572937, at *2 (S.D.N.Y. June 1, 2010) (noting that "[p]reliminary approval of a settlement agreement requires only an initial evaluation of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties") (internal quotation marks and citations omitted).

Generally, approval of a class action settlement involves a two-step process.  First, the court preliminarily approves the proposed settlement by evaluating the written submissions and informal presentation of the settling parties, as well as the negotiating process leading to the settlement.  Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d at 116; see Hernandez v. Merrill Lynch & Co., No. 11 CV 8471, 2012 WL 5862749, at *1 (S.D.N.Y. Nov. 15, 2012) (holding that the court need only find that there is "probable cause" to submit the settlement to the class members) (quoting In re Traffic Exec. Ass'n E. R.Rs., 627 F.2d 631, 634 (2d Cir. 1980)).

Second, once notice has been sent to the class, the court holds a final fairness hearing to "determine whether the settlement's terms are fair, adequate, and reasonable . . . ." Capsolas v. Pasta Res., Inc., No. 10 CV 5595, 2012 WL 4760910, at *4 (S.D.N.Y. Oct. 5, 2012). In evaluating a proposed settlement for procedural fairness, the court has a "'fiduciary responsibility of ensuring that the settlement is . . . not a product of collusion, and that the class members' interests [were] represented adequately.'" Clement v. American Honda Fin. Corp., 176 F.R.D. at 29 (internal citation omitted) (quoting In re Warner Commc'ns Secs. Litig., 798 F.2d at 37); see also Becher v. Long Island Lighting Co., 64 F. Supp. 2d at 178 (holding that the court must determine if the settlement was "achieved through arms-length negotiations by counsel with the experience and ability to effectively represent the class's interests") (citing Weinberger v. Kendrick, 698 F.2d at 74); see also D'Amato v. Deutsche Bank, 236 F.3d at 85 (noting that the district court must "determine[] a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms"); In re Nissan Radiator/Transmission Cooler Litig., No. 10 CV 7493, 2013 WL 4080946, at *4.

1. Analysis of the Procedural Fairness of the Settlement

The plaintiffs represent that the proposed settlement was entered into only after plaintiffs' counsel investigated the Class Members' claims. (Pls.' Mem. at 11). In this regard, counsel reviewed and analyzed significant amounts of discovery, and "conducted in-depth interviews with the Plaintiffs and potential class members to determine the hours they worked, the nature of any potential wage claims they had . . . the wages they were paid, [and] the nature of their daily activities." (Id. at 11-12). Counsel also obtained over 1,600 pages of payroll records, plaintiffs' timesheets and wage statements (as well as a sample of other employees' records), employee

17

information sheets, and an employee list.  (Id. at 12).  In addition, the parties engaged in a full

day of arms-length settlement negotiations through a court mediator, after which the parties

reached an agreement in principle.  (Id. at 2-3)

Given the presumption of fairness when a class settlement has been reached after "arm's-

length negotiations between experienced, capable counsel after meaningful discovery," see Wal-

Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d at 116 (internal citations and quotations omitted),

the Court finds that the process of reaching the proposed settlement in this case was procedurally

fair.

2.  Substantive Fairness Factors

(a)  Complexity, Expense, and Likely Duration of the Litigation

Turning to the Grinnell factors, the parties "seek[] to avoid significant expense and

delay" that would result from continuing litigation, and yet ensure recovery for the class.  (Pls.'

Mem. at 10).  With approximately 100 potential Class Members involved, the number of factual

and legal claims in the case makes it clear that trial in the case would be complex.  See Romero

v. La Revise Assocs., L.L.C., 58 F. Supp. 3d 411, 420 (S.D.N.Y. 2014) (finding in an FLSA and

NYLL lawsuit that "the large number of class members and the fact-intensive nature of their

claims mean that litigation would likely be lengthy, complex, and expensive"); Garland v. Cohen

& Krassner, No. 08 CV 4626, 2011 WL 6010211, at *7 (E.D.N.Y. Nov. 29, 2011) (noting that

"[g]iven the complexity of any class action lawsuit . . . it is reasonable to assume that absent the

instant Settlement, continued litigation would have required extensive time and expense").

Indeed, in the absence of a settlement, this case would require a substantial expenditure

of money and time by both parties in pursuing this litigation.  First, if the case had not settled,

18

there would be extensive motion practice relating to plaintiffs' motion for conditional

certification, expert discovery, Rule 23 class certification proceedings, a motion for

decertification, and ultimately summary judgment.  (Pls.' Mem. at 10).  Plaintiffs predict that the

trial would be "complex" and "consume vast amounts of time and resources for both sides."  (Id.

at 11).  In addition, there is always the potential for an appeal, which would inevitably produce

delay and increase costs to all parties.  (Id.)  Thus, this factor of potential protracted litigation

favors settlement.

> (b)    Reaction of Class to Settlement

Although notice of the Settlement has not yet been issued to the Class Members,

plaintiffs' counsel notes that the Named Plaintiffs have agreed to the terms of the settlement, and

expect the Class Members to react favorably to the Agreement.  (Id. at 11).  This factor therefore

weighs slightly in favor of settlement.

> (c)    The Stage of the Proceedings and Amount of Discovery Completed

As noted, the parties have already conducted sufficient discovery to evaluate the merits of

the case, participated in a lengthy mediation with an independent mediator, and developed "'an

adequate appreciation of the merits of the case before negotiating.'"  (Id. (quoting In re Warfarin

Sodium Antitrust Lit., 391 F.3d 516, 537 (3d Cir. 2004)); see also Beckman v. KeyBank, N.A.,

293 F.R.D. 467, 475 (S.D.N.Y. 2013).

> (d)    The Risks of Proceeding

Plaintiffs acknowledge that there is a considerable risk should the case proceed, both in terms of liability and damages. (Pls.' Mem. at 12). Plaintiffs cite the "fact-intensive" nature of proving liability at trial particularly in light of the defenses available to defendants. (Id.) Moreover, to prepare for a trial would require "significant factual development," and the outcome of any trial and ultimately an appeal, carries a risk for plaintiffs. (Id.) Although plaintiffs have expressed confidence in the merits of their claims, defendants have not admitted or conceded fault, liability, or wrongdoing. (Sett. Agr. at 2).[10] Thus, plaintiffs' likelihood of success should be evaluated in light of the risks of trial and appeal and the prolonged nature of this type of litigation. Defendants have been well represented by highly competent counsel who would likely pursue all potential defenses and raise multiple issues in the course of the litigation, making the outcome of plaintiffs' claims uncertain. While plaintiffs' counsel is confident in the case and experienced, the inevitable process of trial and appeal is uncertain and weighs in favor of settlement. (Pls.' Mem. at 12).

When counsel has sufficient information to appreciate the merits of the case, settlement is favored. Velez v. Novartis Pharm. Corp., No. 04 CV 09194, 2010 WL 4877852, at *13 (S.D.N.Y. Nov. 30, 2010); see also In re Warfarin Sodium Antitrust Litig., 391 F.3d at 537. Thus, this factor favors approval of the settlement.

 

(e)   Maintaining the Class Through Trial

---

[10] Citations to "Sett. Agr." refer to the proposed Settlement Agreement and Release, dated May 28, 2019, ECF No. 35, attachment 1.

Plaintiffs acknowledge that there is a risk associated with obtaining and maintaining class certification through trial. (Pls.' Mem. at 12-13). In the absence of a settlement, if plaintiffs were to move for class certification, defendants would likely oppose the motion and move for decertification of any FLSA collective action. (Id. at 13). Plaintiffs must also overcome the more stringent requirement for Rule 23(b)(3) certification. (Id.) This process would require extensive briefing by both parties and inherently involves risk, expense, and delay. (Id.) Since the proposed settlement would eliminate the aforementioned risk, expense, and delay, the Court finds that this factor favors approval.

(f)     Ability of Defendants to Withstand a Greater Judgment

The parties do not state whether defendants could withstand a judgment greater than what is provided for in the Settlement Agreement. (See id. at 13). However, this factor standing alone does not mean that the settlement is unfair. (Id. (citing Beckman v. KeyBank, N.A., 293 F.R.D. at 476)).

(g)     Range of Reasonableness of Settlement Fund

The Settlement Agreement provides that defendants will pay $200,000. (Sett. Agr. § 3.1(A)). Plaintiffs contend that each Class Member will receive a payment that is proportional to the duration of his or her employment with defendants during the class period. (Pls.' Mem. at 13). "Weighing the benefits of the settlement against the risks associated with proceeding in the litigation," plaintiffs assert that the settlement amount is reasonable. (Id.) Plaintiffs also argue that the settlement is fair and reasonable under an overall Grinnell analysis. (Id. at 14).

(h)     Evaluation of the Range of Possible Recovery

Although distribution of the Fund based on a proportion of the duration of a worker's employment seems on its face to be fundamentally fair, the Court must evaluate the award under the settlement as compared to what an individual plaintiff might receive if awarded the full value of his claims.  As noted, one of the factors in evaluating a settlement in an action under the FLSA, as set forth in Wolinsky, is plaintiffs' range of possible recovery.  Wolinsky v. Scholastic Inc., 900 F. Supp. 2d at 335.  While the Court recognizes that "a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair," Johnson v. Brennan, No. 10 CV 4712, 2011 WL 4357376, at *11 (S.D.N.Y. Sept. 16, 2011) (quoting Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 628 (9th Cir. 1982)), the Court must be provided sufficient information to compare the proposed awards to the plaintiffs' claims.  When the proposed settlement provides a meaningful benefit to the class members when considered against the obstacles to proving plaintiffs' claims with respect to damages in particular, the agreement is reasonable.  See In re MetLife Demutualization Litig., 689 F. Supp. 2d 297, 340 (E.D.N.Y. 2010).

Here, the parties have not provided the Court with specific calculations or information as to the average regular rate of pay that each member of the Collective or the Class earned on a weekly basis.  Nor have they provided the amounts that counsel has calculated as lost wages due to shaved time, or how the amounts awarded in the settlement compare to the amounts plaintiffs might be expected to obtain if the case proceeded to trial and plaintiffs were successful on all claims.

The Complaint alleges that each of the three Named Plaintiffs was scheduled to work on average five days per week; on four of those days, they worked from 7:00 a.m. to 4:00 p.m., and

22

for the fifth day, they worked from 7:00 a.m. to 2:00 p.m.  (See Compl. ¶¶ 28, 31, 34).  In total, they each claim that they worked an average of 43 hours per week.  (Id.)

As for their regular rate of pay, plaintiff Rosario is alleged to have received a regular rate of pay of $9.50 per hour from January 2012 through December 2015; in 2016, his pay rate increased to $13.00 an hour with an overtime rate of $19.50 an hour.  (Id. ¶ 29).  From January 2017 through May 2017, his regular rate of pay increased to $14.50 an hour, with his overtime rate at $21.76 per hour.  (Id.)  Finally, in June his rate again increased to $16.00 an hour with an overtime rate of $24.00 an hour.  (Id.)

Plaintiff Carrera similarly was paid different amounts during the time he worked for defendant, earning $9.00 an hour from January 2012 through December 2015; $13.00 an hour in 2016; $14.50 an hour from January 2017 through May 2017; and $15.00 an hour from June 2017 through the end of his employment.  (Id. ¶ 32).

Plaintiff Alvarez was paid $9.00 an hour between January 2012 and December 2013, but in 2014, unlike the other plaintiffs, Alvarez's rate went up to $10.50 an hour.  (Id. ¶ 35).  In 2015, his rate increased to $12.50 an hour and then in 2016, it increased again to $14.00 an hour. (Id.)  From January 2017 through May 2017, he was paid $14.50 per hour like the other two plaintiffs, and then in or around June 2017, the rate increased to $16.00 an hour.  (Id.)

A comparison of the rates of pay received by the three Named Plaintiffs suggests that members of the proposed Class were not paid uniformly during the Class period, with some receiving pay increases at different times and in different amounts.  The Court also currently lacks information as to whether the other Class Members worked the same number of hours per week as the named Plaintiffs (the Complaint states only that Class Members "had similar work

schedules and received similar hourly rates" (see Compl. ¶ 36)) or for how long the defendants

employed the 100 potential Class Members, which would enable the Court to evaluate how much

each Class Member would be expected to receive if the Class were successful during the

litigation.  The parties have not provided the Court with a breakdown of the amounts that they

anticipate will be received by each Class Member, nor have they given the Court a projection as

to what the possible range of recovery would be after trial in order to compare the amounts to be

received pursuant to the Settlement Agreement.  Thus, it is impossible for the Court to render an

opinion on the fairness of the proposed settlement.

 In Chen v. XpresSpa, a prior action brought by the same firm, this Court rejected a

proposed settlement for similar reasons – namely, that the plaintiffs had failed to provide

sufficient information for the Court to evaluate the amounts to be received by the Class in

settlement as compared with the maximum possible recovery.  See Chen v. XpresSpa, No. 15

CV 1347, 2019 WL 5792315, at *28-30; see also Douglas v. Allied Universal Security Services,

371 F. Supp. 3d at 83 (declining to approve a proposed settlement, where the parties had failed to

provide the court with the potential range of recovery for the employees, noting that "a plaintiff

must at least indicate 'each party's estimate of the number of hours worked or the applicable

wage'") (quoting Lopez v. Nights of Cabiria, LLC, 96 F. Supp. 3d 170, 176 (S.D.N.Y. 2015));

Mamani v. Licetti, No. 13 CV 7002, 2014 WL 2971050, at * 2 (S.D.N.Y. July 2, 2014) (rejecting

the parties' proposed FLSA and NYLL settlement because they had not provided the Court with

each party's estimate of the number of hours worked or the applicable wage).

 In Chen v. XpresSpa, the parties did not provide the Court with any information as to the

average regular rate of pay that each member of the Collective or the Class earned on a weekly

basis.  Moreover, even though the named plaintiffs in <u>Chen</u> submitted declarations in connection with the initial motion for collective action certification indicating that they worked on average eight hours a day, four to six days a week, there was no information provided as to the amount of pay plaintiffs earned.  <u>See</u> <u>id.</u>, 2019 WL 5792315, at *28-30.  Given the parties' failure to provide relevant information that would allow a comparison between the amount a class member would obtain under the XpresSpa settlement agreement and the total amount that an individual, or even the whole class, was projected to receive in the event of full recovery, the Court declined to approve the settlement because the Court was unable to determine the fairness of the individual allocations in that case.  <u>Id.</u> at 32.

Without an estimate of the overall possible maximum recovery or information as to how much is to be allocated to each Class Member, assuming all 100 Class Members decide to participate in the settlement, the Court is not in a position to evaluate if the Settlement Fund is fair and reasonable as to each plaintiff under <u>Cheeks</u>.

From the $200,000, the Named Plaintiffs are to receive $10,000 each, for a total of $30,000; the Claims Administrator is to receive $20,000, and the attorneys will be seeking $66,666 plus an undisclosed amount in costs and expenses.  (Pls.' Mem. at 5-6).  When these amounts, not including costs and expenses, are subtracted from the $200,000 total, there will only be $88,334 left to distribute to the Class Members.  If all 100 Class Members participate and receive an equal distribution of the remaining award, which the Court recognizes would not be the case given the different periods worked, each member would receive approximately $883,

not accounting for costs and expenses.[11]  Presumably some employees who worked longer would receive more and others would receive less based on the time they were employed.  Without further information regarding the maximum amounts allegedly owed and the amounts to be received, it is impossible for the Court to evaluate whether these amounts are reasonable.

Moreover, the Court notes that the Complaint contains claims of wage notice violations under the NYLL.  The range of maximum recovery for claims under these statutory provisions could be up to $5,000 depending on the time period of the alleged violations.  See N.Y. LAB. LAW § 198 (McKinney 2019).  The proposed settlement does not include recovery for any of these damages.

In addition, from plaintiffs' papers, it appears that plaintiffs' counsel has access to some of the information that the Court needs to evaluate the proposed settlement.  According to the Memorandum of Law submitted in support of the proposed settlement, counsel has interviewed the Named Plaintiffs and potential Class Members as to the hours worked, wages paid and the nature of their potential wage claims.  (Pls.' Mem. at 11-12).  Counsel also represent that they have reviewed employment records consisting of a payroll records and a sampling of timesheets and wage statements.  (Id.)  Thus, it appears that counsel has *some* information that could have been provided to the Court to assist in the fairness analysis, but they have not provided any of this information to the Court.

---

[11] It is also unclear whether the Class Members will be allocated amounts based on a uniform rate of pay or whether the different pay rates, reflected in the claims of the Named Plaintiffs, will be taken into account in allocating the Fund.

26

Without further information about the Class Members' maximum recovery and without some way to compare the amounts to be received with the amounts plaintiffs might obtain if the case were to proceed to trial, the Court cannot opine on the fairness of the settlement and respectfully recommends that the proposed settlement not be approved absent the submission of further information about wages paid, hourly rates, amounts allegedly shaved from pay, the proposed distribution among the Class Members, and the maximum possible recovery.

1) The Service Awards

The plaintiffs also have asked for service awards of $10,000 per Named Plaintiff.  Courts often grant named plaintiffs in class action cases an enhanced award, either in the form of a flat fee or a multiplied amount of their share of the settlement fund.  See In re Nissan Radiator/ Transmission Cooler Litig., No. 10 CV 7493, 2013 WL 4080946, at *15 (holding that an "incentive" award is common in class actions and serves to compensate plaintiffs for their time and effort in the pursuit of litigating the claim); compare Capsolas v. Pasta Res. Inc., No. 10 CV 5595, 2012 WL 4760910, at *10 (awarding a service award of $20,000 to one named plaintiff and $10,000 for the remaining named plaintiffs), with Velez v. Majik Cleaning Serv., Inc., No. 03 CV 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 22, 2007) (awarding named plaintiffs "twice the amount of the award that other class members will receive").  The general "guiding standard" for such awards is, broadly, "the existence of special circumstances including the personal risk (if any) incurred by the plaintiff[] in becoming and continuing as a litigant . . . [or] any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and, of course, the ultimate recovery."  Gay v. Tri-Wire Eng'g Solutions, Inc., No. 12

CV 2231, 2014 WL 28640, at *13 (E.D.N.Y. Jan. 2, 2014) (quoting Roberts v. Texaco, Inc., 979

F. Supp. 185, 200 (S.D.N.Y. 1997)).

Here, the Named Plaintiffs, in challenging the practices of their employer, risk retaliation

and loss of employment, and may also risk discrimination from future employers who learn of

the litigation.  See Diaz v. Scores Holding Co., Inc., No. 07 CV 8718, 2011 WL 6399468, at *3

(S.D.N.Y. 2011) (stating that "[i]n FLSA collective actions . . . service awards are important to

compensate plaintiffs for the time and effort expended in assisting the prosecution of the

litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens

sustained by the plaintiff"); Velez v. Majik Cleaning Serv., No. 03 CV 8698, 2007 WL 7232783,

at *7 (stating that "in employment litigation, the plaintiff is often a former or current employee of

the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class

as a whole, undertaken the risk of adverse actions by the employer or co-workers").

Pursuant to the Settlement Agreement, the three Named Plaintiffs will seek service

awards of $10,000 each, for a total of $30,000.  (See Pls.' Mem. at 5).  At this time, given the

absence of information as to the amounts to be received by the other Class Members (see

discussion supra at 21 et seq.), the Court is unable to express a view as to the fairness of these

service awards.  Accordingly, in the absence of further information, the Court declines to

recommend that the service awards be found fair and reasonable.

2)  Attorneys' Fees

In the Settlement Agreement, counsel for plaintiffs indicate that they are seeking an

award of attorneys' fees of $66,666, representing 33.33% of the Settlement Fund before a

reduction for costs, the Claims Administrator's fees of $20,000,[12] and service awards.  After

subtracting the Claims Administrator's fee and service awards, the proposed attorneys' fees

represent over 44% of the remaining funds.  While the final fee award is not being determined at

this point, "[c]ounsel must provide a factual basis for a fee award, typically with

contemporaneous time records."  Guareno v. Vincent Perito, Inc., No. 14 CV 1635, 2014 WL

4953746, at *2 (S.D.N.Y. Sept. 26, 2014).  Courts may award fees based on either a lodestar

calculation or a percentage of the settlement fund; however, Cheeks and Wolinsky require the

court to review the attorneys' fee as part of the court's overall review of the fairness of the

settlement.  As the court in Douglas v. Allied Universal Security Services noted, "[a] fee that is

so disproportionate to a plaintiff's recovery raises questions of whether counsel has taken monies

that should be awarded to the employee."  371 F. Supp. 3d at 85.  Thus, "[e]ven where attorneys'

fees are sought pursuant to the percentage of the fund method, 'counsel must submit evidence

providing a factual basis for the award.'"  Arango v. Scotts Co., LLC, No. 17 CV 7174, 2019

WL 117466, at *5 (S.D.N.Y. Jan. 7, 2019) (quoting Wolinsky v. Scholastic Inc., 900 F. Supp. 2d

at 336).  A lodestar check is a common way for courts in this circuit to review the reasonableness

of an attorney's requested fee.  See Bhardwhaj v. Alan's Farmland Ltd., No. 16 CV 7880, 2018

WL 1891313, at *2 (S.D.N.Y. Apr. 5, 2018).

     In this case, plaintiffs' counsel has not yet provided any records of hours spent on this

matter, nor have they provided any information at the rates at which they bill their clients.  At

---

[12] As noted in Chen v. XpresSpa, and in note 7, supra, the chosen administrator in this
case is owned in part by plaintiffs' counsel.  See 2019 WL 5792315, at *4 n. 9.  In both cases,
plaintiffs' counsel has failed to provide information to justify the Claims Administrator's
projected fee.

this time, the Court is not in possession of sufficient information to opine on the reasonableness of the requested fees.

   3)   The Mechanism for Distribution of the Fund and Proposed Notice

In evaluating the settlement of the collective action brought under the FLSA, the Court has examined the fairness of the proposed method for distributing the Fund and providing notice. In Chen v. XpresSpa, the Court expressed concern with the proposed mechanism for notifying the potential Collective Members by simply sending the Members a check in the mail, in an amount previously determined by the parties based on the number of weeks the collective member worked.  See 2019 WL 5792315, at *20-26.  By cashing the check, the collective member would be deemed to have opted into the settlement and would be releasing defendants from any further claims.  Id. at *21.  In Chen, a separate Rule 23 class of employees in that case who were located exclusively in New York was to receive the traditional Rule 23 Notice, advising them of the lawsuit, the terms of the proposed settlement, the date of the fairness hearing, and the opportunity to "opt out" of the settlement.  Id. at *20.  Plaintiffs in Chen anticipated that the Court would opine on the fairness of the settlement with respect to the members of the collective action at the same time that the Court conducted the fairness hearing for the Rule 23 class.  Advanced notice of the hearing would only be sent to the Rule 23 class members; the collective members would not be given notice and an opportunity to be heard about the fairness of the settlement.  Id. at *21.  Thus, instead of following the traditional opt-in form procedure generally followed in FLSA collective actions, and being advised of their right to appear at the ultimate fairness hearing, the collective members in Chen would only be given notice after the fairness of the settlement had already been decided, essentially depriving them of

any opportunity to appear at the fairness hearing and to be heard as to their views on the fairness of the amounts they would be receiving and how they were calculated. Id.

The same procedure is being proposed in this case with respect to the FLSA claims. The language proposed to be included in connection with the settlement checks states: "By my endorsement of this check and accepting payment, I opt into the lawsuit E.D.N.Y. 18 CV 3297, consent to join the Fair Labor Standards Act collective action in this lawsuit, and release all of my claims as described in the Settlement Agreement, and in the Notice in this lawsuit." (Mot. at 3). While the due process concerns raised by the procedure proposed in Chen are somewhat alleviated here because the collective members appear to be coextensive with the Rule 23 Class Members and will receive notice of the Rule 23 settlement and fairness hearing, the Court declines to endorse a process whereby FLSA claims can be released and the fairness of a settlement determined before the FLSA collective members are given an opportunity to opt into the action and appear at the fairness hearing. As noted in Chen, it is unclear how the Court has jurisdiction to decide if a settlement is fair when the affected individuals are not before the Court because they have not yet opted in. It is also unclear that such a procedure comports with the Cheeks requirement that the Court approve a proposed settlement as fair before the claims may be dismissed. See Cheeks v. Freeport Pancake House, Inc., 796 F.3d at 206.[13]

---

[13] While plaintiffs had cited cases that have approved similar settlement procedures, as this Court noted in Chen, the courts approving the settlements appear to have endorsed the proposed order submitted by the parties, without addressing the specific concern raised by this Court. See Sierra v. Triple J. Associates of Queens, Inc., 12 CV 4462 (E.D.N.Y. 2013); Flores v. KC 53 LLC, 12 CV 8095 (S.D.N.Y. 2013); Viafara v. MCIZ Corp., 12 CV 7452 (S.D.N.Y. 2014); Romero v. LaRevise Assocs. LLC, 12 CV 8324 (S.D.N.Y. 2014); Carillo v. 27-39 East 30 Rest. Corp., 13 CV 4491 (S.D.N.Y. 2015); Guaman v. 5 "M" Corp., 13 CV 3820 (S.D.N.Y. 2015); Alvarado v. Dublin 6 at 115 Broadway, Inc., 14 CV 3939 (S.D.N.Y. 2015); Santana v.

The court raised similar concerns in <u>Douglas v. Allied Universal Security Services,</u> concluding that the court could not preliminarily approve a settlement procedure whereby checks would be sent to class members and potential collective members, and those collective members who cashed their checks would be deemed to have opted into the FLSA settlement and relinquished their FLSA claims at the same time. 371 F. Supp. 3d at 85. The Court noted that the proposed procedure "has the process entirely backwards; it has the Court conduct final <u>Cheeks</u> review before any member of the collective has opted in." <u>Id.</u> at 86. As the court explained, the requirement of opting into a collective action is to "ensure the presence of plaintiffs before the court," and to enable the court to question the party if necessary. <u>Id.</u> at 86.

While the Rule 23 Class Members in this case will receive the Notice and have the opportunity to opt out of the Settlement, this Court declines to approve the notice process as to the FLSA collective claims. Even though the concerns raised by the procedure, as a practical matter, will not likely make a difference here, the Court respectfully recommends that the district court not endorse the continued use of this procedure in the context of hybrid class actions. As noted, the Court is recommending that the proposed Settlement be disapproved at this time, not because of the Notice procedure, but because the parties have failed to provide the Court with the

---

Fishlegs LLC, 13 CV 1628 (S.D.N.Y. 2016); <u>Corte v. Fig & Olive Founders LLC</u>, 14 CV 7186 (S.D.N.Y. 2015); <u>Perez v. Dos Toros, LLC</u>, 14 CV 9183 (S.D.N.Y. 2016); <u>Cabrera v. Glen Oak Enterprises, LLC</u>, 14 CV 5599 (E.D.N.Y. 2016); <u>Hernandez v. McGee's Bar & Grill</u>, 15 CV 6067 (S.D.N.Y. 2016); <u>Galvez v. Lucky Peral LLC</u>, 15 CV 5177 (S.D.N.Y. 2016); <u>Solorio v. 142 Mercer Street, LLC</u>, 15 CV 5177 (S.D.N.Y. 2016); <u>Metodio v. Down & Dirty Tacos Meatpacking LLC</u>, 15 CV 8754 (S.D.N.Y. 2017); <u>Ruiz v. Force Servs. LLC</u>, 16 CV 6729 (S.D.N.Y. 2017); <u>Vasquez v. GRK 451 Lexington Ave. LLC</u>, 16 CV 7305 (S.D.N.Y. 2017); <u>Iturbide v. Cho Family Dynastia, Inc.</u>, 16 CV 0596 (S.D.N.Y. 2018)). Plaintiffs' letter also notes that in all of these cases, the class settlements were granted final approval. (Pls.' Ltr at 2).

information necessary to evaluate the overall fairness of the Settlement.  (See discussion supra at

21 et seq.).

CONCLUSION

Accordingly, for the reasons stated above, the Court respectfully recommends that the

court deny the parties' motion for preliminary approval of the proposed settlement as articulated

in the revised Settlement Agreement.  It is further recommended that the parties be given two

weeks from the district court's Order adopting this Report to submit the supporting information

detailed above.

Any objections to this Report and Recommendation must be filed with the Clerk of the

Court within fourteen (14) days.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also

Fed. R. Civ. P. 6(a), (e) (providing the method for computing time).  Failure to file objections

within the specified time waives the right to appeal the District Court's order.  See, e.g., Caidor

v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a

. . . report [and recommendation] operates as a waiver of any further judicial review of the

magistrate [judge's] decision").

The Clerk is directed to send copies of this Order to the parties either electronically

through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
        November 13, 2019

                                  /s/ Cheryl L. Pollak
                             Cheryl L. Pollak
                             United States Magistrate Judge
                             Eastern District of New York

33