UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
JOHN ROSARIO, *et al.*,

                Plaintiffs,

      -against-

EMZ SOLUTIONS LLC, *et al.*,

                Defendants.
--------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
18 CV 3297 (RPK) (CLP)

**POLLAK**, Chief United States Magistrate Judge:

On June 5, 2018, plaintiffs John Rosario, Lucas Carrera, and Mario Alvarez ("Named plaintiffs") commenced this class and collective action on behalf of themselves and other similarly situated employees against EMZ Solutions LLC, Arnold Roth, Yaakov Roth and Edward Forkash (collectively, "defendants"), seeking damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206(a), 207(a), and 216(b), and the New York Labor Law ("NYLL") § 190 et seq. and § 650 et seq., for unpaid wages, due to a policy of time shaving, and for violations of the requirements to provide wage notices and accurate wage statements under Sections 195(1) and 195(3) of the NYLL.

On May 29, 2019, the parties indicated that they had reached a proposed settlement and filed a motion with the court requesting an Order granting preliminary approval of the proposed settlement as set forth in the Settlement Agreement and Release (the "Agreement").  (See Sett. Agr.).[1]  The motion was referred to the undersigned to prepare a Report and Recommendation.

---

[1] Citations to "Sett. Agr." refer to the original Settlement Agreement, filed May 29, 2019, as Exhibit A to the Affidavit in Support of Motion for Preliminary Approval of Class Settlement, ECF No. 35-1.

1

On November 14, 2019, this Court issued a recommendation that the district court deny the motion, which was adopted on December 20, 2019.  On January 9, 2020, the parties filed a letter to address the Court's concerns, and on March 27, 2020, plaintiffs filed a second motion for preliminary approval.

For the reasons set forth below, the Court respectfully recommends that the district court grant the second motion for preliminary approval.

## FACTUAL BACKGROUND

The relevant facts underlying this class and collective action are drawn from the Amended Complaint, dated July 11, 2018.  As set forth therein, the defendants employed plaintiffs and other similarly situated employees as construction workers.  (Compl.[2] ¶¶ 16, 27, 30, 33).  Plaintiffs allege that defendants did not pay them proper wages due to a policy of time shaving.  (Id. ¶¶ 37, 38).  Plaintiffs also assert that defendants failed to provide them with proper wage statements and wage notices as required by the NYLL.  (Id. ¶¶ 39, 40).

On February 28, 2019, the parties attended a full-day in-person mediation with mediator Raymond Nardo, Esq., a member of the E.D.N.Y. mediation program, and reached an agreement as to the principal terms of the settlement.  (See 3/7/2019 Ltr.[3]).  Plaintiffs then filed a motion seeking preliminary approval of the class action settlement and release, conditional certification of the class for settlement purposes, appointment of class counsel, appointment of Advanced

---

[2] Citations to "Compl." refer to plaintiffs' Amended Complaint, filed on July 11, 2018, ECF No. 8.

[3] Citations to "3/7/2019 Ltr." refer to a joint letter from the parties informing the court of the mediation and settlement in principle, ECF No. 29.

Litigation Strategies, LLC as Claims Administrator, and approval of the proposed Notice of Settlement.  (See First Mot.[4]).

The first motion for approval proposed a settlement of both the Rule 23 class action claims brought under the NYLL, and the claims brought on behalf of the collective under the FLSA.  The proposed settlement provided that the defendants were to fund a settlement in the total amount of $200,000, to cover damages owed to approximately 100 hourly construction workers employed by defendants for the period from June 5, 2010 to February 28, 2019 (the "Class").  (Pls.' Mem.[5] at 3).  In addition, defendants agreed to pay the employer's share of state and federal payroll taxes with respect to the settlement amounts which would be treated as wages.  (Id.)

According to the first motion for preliminary settlement approval, the Claims Administrator would send the Proposed Notice ("Notice"[6]) to the last known home address of each Class Member[7] within thirty (30) days of the date of an Order granting preliminary approval.  (Id. at 4).  The Notice gave Class Members thirty days from the initial mailing to exclude themselves from the Class or object to the settlement.  (Id.)  Those Class Members who did not object or opt out would receive a settlement check in an amount to be determined by the Claims Administrator that is "proportional to the duration of his or her employment during the class period" after the fairness hearing.  (Id.)  Class Members who deposited, endorsed or cashed

---

[4] Citations to "First Mot." refer to the first motion for preliminary approval of class settlement, ECF No. 33, dated May 29, 2019.

[5] Citations to "Pls.' Mem." refer to Plaintiff's Memorandum in Support of Motion for Preliminary Approval of Class Settlement, dated May 29, 2019, ECF No. 34.

[6] The proposed Notice is attached as Exhibit B to ECF No. 35, filed May 29, 2019.

[7] References to "Class Members" refer to both members of the Rule 23 class and the coextensive FLSA collective action class.

their checks would release their FLSA claims.  (Id.)  Each settlement check was to contain the

following language:

> RELEASE OF CLAIMS:  By my endorsement of this check
> and accepting payment, I opt into the lawsuit E.D.N.Y.
> 18-cv-3297, consent to join the Fair Labor Standards Act
> collective action in this lawsuit, and release all of my claims
> as described in the Settlement Agreement, and in the Notice
> in this lawsuit.

(Id.)  Any funds remaining from uncashed checks would be applied to a second-round

distribution to the Class Members who cashed their initial checks or be applied to a *cy pres*

donation "as determined by [p]laintiffs' counsel."  (Id. at 5.)[8]

Plaintiffs' counsel indicated that, pursuant to Fed. R. Civ. P. 23(h) and 54(d)(2), they

would seek an award of attorneys' fees of $66,666, plus costs and expenses.  (Id.)  The motion

for fees, which Counsel was to file at a later date, was not opposed by defendants.  (Id.)

Plaintiffs also sought service awards for the three Named Plaintiffs in the amount of $10,000

each, for a total of $30,000.  (Id.)  Finally, plaintiffs' counsel retained Advanced Litigation

Strategies, LLC[9] to act as Claims Administrator, responsible for mailing the Notice, calculating

the individual settlement awards and tax withholdings, pay out the Settlement Fund, provide

---

[8] Counsel have not provided additional details about the proposed *cy pres* donation, and
as such, the Court does not discuss the *cy pres* donation further in this Report and
Recommendation.  However, the Court notes that, when presented with a motion for final
settlement approval, the Court will have to ensure that any *cy pres* funds are distributed to an
appropriate designee and only when "direct distribution to individual class members is not
economically feasible, or where funds remain after class members are given a full opportunity to
make a claim."  Masters v. Wilhelmina Model Agency, Inc., 473 F.3d 423, 436 (2d Cir. 2007)
(internal quotation omitted); see also In re Citigroup Inc. Sec. Litig., 199 F. Supp. 3d 845, 846
(S.D.N.Y. 2016) (providing an overview of *cy pres* doctrine in this Circuit).

[9] As noted in this Court's Order in Chen v. XpresSpa, No. 15 CV 1347, 2019 WL
5792315, at *4 n. 9 (E.D.N.Y. August 20, 2019), Advanced Litigation Strategies, LLC is under
common control of the Lee Litigation Group, PLLC, counsel for plaintiffs in this case as well.

reports, and answer Class Members' inquiries.  (<u>Id.</u> at 6).  For these services, Advanced

Litigation Strategies was to receive fees and expenses which the parties estimate to be $20,000.

(<u>Id.</u>)

Based on a review of the documentation provided, the Court, at the time of the initial

motion for approval, lacked the information necessary to evaluate the fairness of the amounts

being awarded as part of the collective action settlement as required by <u>Cheeks v. Freeport</u>

<u>Pancake House, Inc.</u>, 796 F.3d 199 (2d Cir. 2015), and raised other concerns related to the

procedures proposed for distribution of the settlement.  Accordingly, the Court respectfully

recommended that the settlement not be accepted at that time, and recommended that the district

court allow plaintiffs to submit supplemental information to address the deficiencies the Court

identified with the proposed settlement.  (<u>See</u> 11/13/2019 R&R[10]).

In response to the Court's concerns, the plaintiffs submitted supplemental information to

the Court on January 9, 2020, and submitted a second motion for preliminary settlement approval

on March 27, 2020.  The second motion proposes the same settlement, in which the defendants

will fund a settlement in the total amount of $200,000, to cover damages owed to approximately

100 hourly construction workers employed by defendants for the period from June 5, 2010 to

February 28, 2019.  (3/27/2020 Pls.' Mem. at 1).  Previously, the Court found that the plaintiffs

were using an opt-in procedure that risked undermining due process by not clearly outlining the

Class Members' options nor providing clear opportunities for them to voice their concerns or

---

[10] This Court's original Report and Recommendation, dated November 13, 2019 ("11/13/19 R&R"), docketed as ECF No. 38, was adopted by the Honorable Frederic Block by electronic order on 12/20/2019.  Subsequently, this case was reassigned to the Honorable Rachel P. Kovner.

raise objections to the Settlement.  (See 11/13/2019 R&R at 30-33).  Now, the plaintiffs have adjusted the notice to include more information on how Class Members may object to or raise concerns about the proposed Settlement.  Plaintiffs modified the language of the Notice to clearly outline all of the Class Members' options with respect to the settlement.  (1/9/2020 Ltr.[11] at 8).  In the revised notice,[12] Class Members are notified of their legal rights and options in the Settlement, the procedures for choosing any of the three available options, the impact of the three options, and their ability to voice further concerns in writing and/or in person to the Court at the fairness hearing.  (1/9/2020 Ltr. Ex. A at 3).  The Notice makes it clear that only those Class Members who do not affirmatively opt out will be mailed settlement checks.  It explains that if they endorse/deposit the check, they will be considered as formally opting in to the Collective action.  (Id. at 8).  Given that Settlement checks will only be mailed after the fairness hearing is held, the Court's concern that potential opt-in members would not have an opportunity to be heard on the fairness of the settlement is alleviated somewhat.  (Id.)  The Court notes that the procedure is not what is generally followed in FLSA proceedings where under the normal opt-in procedure, the plaintiff is first required to return a claim form in order to opt into the action. However, as counsel has explained, the process outlined here is designed to expedite the distribution of funds to as many Class Members as possible, and aims to avoid the problems created when prospective plaintiffs fail to return the claims forms.  (See id.).

---

[11] Citations to "1/9/2020 Ltr." refer to plaintiffs' letter in response to the Court's Report and Recommendation, filed January 9, 2020, ECF No. 40.

[12] The Court details the specific changes made in the Notice *infra* at p. 19-20.

All other elements of the settlement agreement remain the same, including attorneys' fees, service awards, and a request that Advanced Litigation Strategies, LLC act as Claims Administrator, receiving fees and expenses which the parties estimate to be $20,000.  (Id. at 7).

DISCUSSION

A.  Rule 23 Class Certification

In its previous Report and Recommendation, the Court considered whether to certify the Class for settlement purposes under Federal Rule of Civil Procedure Rule 23(a).  (See 11/13/2019 R&R at 4-14).  The Court found that the proposed class met all of the requirements of Rule 23(a) – numerosity, commonality, typicality, and adequacy of representation.  (Id. at 6-10).  The Court also found that the proposed class met the requirements of Rule 23(b)(3), as common questions predominated over individual issues and a class action was the superior method of resolution of this matter.  (Id. at 10-12).  In addition, the Court found that the plaintiffs had made the requisite showing to establish a basis for conditional certification of a FLSA § 216(b) collective action, as the employees – all subject to the same improper wage policies due to time shaving and all not provided with the proper wage statements – had satisfied the minimal standard required to warrant conditional collective certification.  (Id. at 14).

Having reviewed the parties' additional papers, the Court finds that the analysis underlying its previous recommendation that the district court grant certification to the Rule 23(b)(3) Class and the FLSA collective for the purpose of settlement stands, and so the Court does not repeat its analysis here.

B.  Standards for Review of the Proposed Settlement

As the Court stated in its previous Report and Recommendation, in conducting a fairness

review under Rule 23 or under Cheeks, the Court must engage in "'an information intensive

undertaking, and the Parties must provide the Court with enough information to evaluate the

bona fides of the dispute.'"  (Id. at 14 (quoting Chen v. XpresSpa, No. 15 CV 1347, 2019 WL

5792315, *19 (E.D.N.Y. August 20, 2019) (internal citations omitted))).  Plaintiffs argue that

preliminary approval requires the court to find only that there is "'probable cause to submit the

settlement to class members and hold a full-scale hearing as to its fairness.'"  (Pls.' Mem. at 8

(quoting Lizondro-Garcia v. Kefi LLC, 300 F.R.D. 169, 179 (S.D.N.Y. 2014) (internal citations

omitted))).

As this Court previously stated in its original Report and Recommendation, the Court

must not only determine that the proposed settlement was procedurally "fair, adequate, and

reasonable, and not a product of collusion."  (11/13/2019 R&R at 15 (quoting Joel A. v. Giuliani,

218 F.3d at 138) and citing Fed. R. Civ. P. 23(e)).  The Court is also required to determine that

the settlement was "achieved through arms-length negotiations by counsel with the experience

and ability to effectively represent the class's interests."  Becher v. Long Island Lighting Co., 64

F. Supp. 2d 174, 178 (E.D.N.Y. 1999) (citing Weinberger v. Kendrick, 698 F.2d 61, 74 (2d Cir.

1982)); see also D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001) (noting that the

district court must "determine[] a settlement's fairness by examining the negotiating process

leading up to the settlement as well as the settlement's substantive terms"); In re Nissan

Radiator/Transmission Cooler Litig., No. 10 CV 7493, 2013 WL 4080946, at *4 (S.D.N.Y. May

30, 2013).

8

In reviewing a proposed settlement for procedural fairness, the court has the "fiduciary responsibility of ensuring that the settlement is . . . not a product of collusion, and that the class members' interests were represented adequately."  In re Warner Commc'ns Sec. Litig., 798 F.2d 35, 37 (2d Cir. 1986); see also D'Amato v. Deutsche Bank, 236 F.3d at 85 (noting that the district court must "determine[] a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms"); In re Nissan Radiator/Transmission Cooler Litig., No. 10 CV 7493, 2013 WL 4080946, at *4 (holding that "approval of class action settlements requires the Court to ensure the settlement is fair, reasonable, and adequate to the Class Members") (internal quotation omitted); Becher v. Long Island Lighting Co., 64 F. Supp. 2d at 178 (holding that the court must determine if the settlement was "achieved through arms-length negotiations by counsel with the experience and ability to effectively represent the class's interests") (citing Weinberger v. Kendrick, 698 F.2d at 74).

For substantive fairness, the Second Circuit has enumerated nine factors to guide courts in evaluating a proposed settlement:

> (1) [T]he complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement; (3) the stage of the
> proceedings and the amount of discovery completed; (4) the risks
> of establishing liability; (5) the risks of establishing damages; (6)
> the risks of maintaining the class action through the trial; (7) the
> ability of the defendants to withstand a greater judgment; (8) the
> range of reasonableness of the settlement fund in light of the best
> possible recovery; and (9) the range of reasonableness of the
> settlement fund to a possible recovery in light of all the attendant
> risks of litigation[.]

City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted), abrogated on other grounds, Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000); see

also D'Amato v. Deutsche Bank, 236 F.3d at 86; Garcia v. Pancho Villa's of Huntington Village,

No. 09 CV 486, 2012 WL 5305694, at *4 (E.D.N.Y. Oct. 4, 2012).  Although the Court is not

required to make a final finding of fairness as to the underlying settlement at this time, the

Grinnell factors are instructive.  See Torres v. Gristede's Operating Corp., Nos. 04 CV 3316, 08

CV 8531, 08 CV 9627, 2010 WL 2572937, at *2 (S.D.N.Y. June 1, 2010) (noting that

"[p]reliminary approval of a settlement agreement requires only an initial evaluation of the

fairness of the proposed settlement on the basis of written submissions and an informal

presentation by the settling parties") (internal quotation marks and citations omitted).

Generally, approval of a class action settlement involves a two-step process.  First, the

court preliminarily approves the proposed settlement by evaluating the written submissions and

informal presentation of the settling parties, as well as the negotiating process leading to the

settlement.  Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d at 116; see Hernandez v. Merrill

Lynch & Co., No. 11 CV 8471, 2012 WL 5862749, at *1 (S.D.N.Y. Nov. 15, 2012) (holding that

the court need only find that there is "probable cause" to submit the settlement to the class

members) (quoting In re Traffic Exec. Ass'n E. R.Rs., 627 F.2d 631, 634 (2d Cir. 1980)).

Second, once notice has been sent to the class, the court holds a final fairness hearing to

"determine whether the settlement's terms are fair, adequate, and reasonable . . . ."  Capsolas v.

Pasta Res., Inc., No. 10 CV 5595, 2012 WL 4760910, at *4 (S.D.N.Y. Oct. 5, 2012).

Finally, when presented with a settlement of a collective action for approval, a district

court's options are to "(1) accept the proposed settlement; (2) reject the proposed settlement and

delay proceedings to see if a different settlement can be achieved; or (3) proceed with

litigation."  Fisher v. SD Prot. Inc., 948 F.3d 593, 606 (2d Cir. 2020) (citing Evans v. Jeff D.,

475 U.S. 717, 727 (1986)).  "[E]ven though a district court has a duty to review an FLSA settlement for reasonableness to prevent any potential abuse, this does not grant the court authority to rewrite contract provisions it finds objectionable."  Id.  Rather, if the court finds one or more provisions of a FLSA settlement agreement to be unreasonable, the Court must reject the proposed settlement.  See id.

In its previous Report and Recommendation, the Court found that the process of reaching the proposed settlement in this case was procedurally fair.  (11/13/2019 R&R at 18).  However, after examining each Grinnell factor, the Court concluded that it did not have enough information to determine whether the proposed settlement was substantively fair.  The Court now conducts a second Grinnell analysis, incorporating its prior analysis as well as the new information that the parties have provided.

(a)   Pre-existing factors in favor of settlement

The Court previously found that:  (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of proceeding with litigation; and, (5) the risk in maintaining class certification through trial, all weighed in favor of granting preliminary approval.  (11/13/2019 R&R at 18-21).  The Court also found that, while the parties did not state whether defendants could withstand a judgment greater than what is provided for in the Settlement Agreement, this factor standing alone did not mean that the settlement was unfair. (Id. at 21).

11

(b)   Range of Reasonableness of Settlement Fund and Evaluation of the Range
of Possible Recovery

The Settlement Agreement provides that defendants will pay $200,000 to resolve all

issues in this case.  (Sett. Agr. § 3.1(A)).  Plaintiffs contend that each Class Member will receive

a payment that is proportional to the duration of his or her employment with defendants during

the class period.  (Pls.' Mem. at 13).  "Weighing the benefits of the settlement against the risks

associated with proceeding in the litigation," plaintiffs assert that the settlement amount is

reasonable.  (Id.)  Plaintiffs also argue that the settlement is fair and reasonable under an overall

Grinnell analysis.  (Id. at 14).

In the November 2019 Report and Recommendation, the Court recommended that the

district court reject the preliminary settlement because plaintiffs had not submitted sufficient

information to allow the Court to evaluate the proposed settlement in light of the range of

possible recovery.  (11/13/2019 R&R at 24, 25).  On January 9, 2020, the parties submitted a

joint letter in response to the Report and Recommendation to address the Court's concerns.[13]

(See 1/9/2020 Ltr.[14]).

In the letter, plaintiffs estimate that the proposed Class is owed $929,765.00 in unpaid

wages due to rounding and time shaving, including amounts owed for wage notice and wage

statement violations.  (1/9/2020 Ltr. at 1-2).  Defendants continue to vigorously contest

---

[13] By electronic order on January 14, 2020, the Court instructed plaintiffs to integrate the
contents of their letter into a renewed motion for preliminary approval.  Instead, they submitted a
motion that excluded much of the helpful material in their January 9, 2020 letter.  The Court asks
the parties to attend to the Court's instructions in the future.

[14] Citations to "1/9/2020 Ltr." refer to the parties' joint letter in response to the Court's
Report and Recommendation, filed January 9, 2020, ECF No. 40.

plaintiffs' claims, denying the practice of wage shaving, and stating that plaintiffs were paid all owed wages and overtime, and were given proper wage statements and notices. (Id. at 3, 4).

In providing their calculation of unpaid wages, plaintiffs note that they used plaintiffs' allegations as well as defendants' time sheets to calculate that each class member had three hours of time shaved per week. (Id. at 2). Plaintiffs derived the pay rate as follows: the "start rate" as provided by defendants in 2015; the assumed rate[15] which rose to $14.00 in 2016, then $15.00 in 2017, and $16.00 in 2018; and the "final rate" as provided by defendants for 2019.[16] (Id.) In response to the Court's prior question regarding whether other class members worked the same number of hours per week as the named plaintiffs, plaintiffs state that they "made such an assumption in connection with the mediation." (Id.) According to the proposed settlement, plaintiffs will be awarded their portion of the settlement funds proportionately, based on the uniform rate[17] of pay and the weeks worked within the class period. (Id. at 5).

Considering the defendants' position that they are not liable for any unpaid wages, and controlling for the defendants' assumptions, plaintiffs report that their "best case scenario" damages would likely be reduced given further litigation. (Id. at 5). Based solely on back wages owed, and excluding any liquidated and statutory damages, plaintiffs estimate that class damages would total $203,107.50. (Id. at 5). Plaintiffs calculate that if the plaintiffs were to prevail solely on their back-wage claims, the $200,000 figure would represent a 99% recovery of total

---

[15] The "assumed rate" is the estimated pay rate listed on the plaintiffs' time sheets using defendants' records as a starting point. (1/9/2020 Ltr. at 1-2).

[16] The letter does not provide a specific dollar figure for either the 2015 start rate or the 2019 final rate.

[17] The parties agreed to a "uniform rate of pay," meaning that the pay for all members within a given class period would be assumed to be the same. (1/9/2020 Ltr. at 5).

back-wages for the Class, and a 22% recovery of all of plaintiffs' estimated damages.[18]  (See id.).
Plaintiffs argue that even when considering the percentage of recovery of all damages, the
settlement is still a fair and reasonable result, given defendants' position that they owe nothing to
the plaintiffs.  (Id.)

"It is well-settled law that a cash settlement amounting to only a fraction of the potential
recovery will not per se render the settlement inadequate or unfair."  Johnson v. Brennan, No. 10
CV 4712, 2011 WL 4357376, at *11 (S.D.N.Y. Sept. 16, 2011) (quoting Officers for Justice v.
Civil Serv. Comm'n, 688 F.2d 615, 628 (9th Cir. 1982)).  When the proposed settlement
provides a meaningful benefit to the class when considered against the obstacles to proving
plaintiff's claims with respect to damages in particular, the agreement is reasonable.  See In re
MetLife Demutualization Litig., 689 F. Supp. 2d 297, 340 (E.D.N.Y. 2010).  As such, given the
additional information that the parties have provided, the Court finds that the range of settlement
here is reasonable.

(c)     Approval of Service Award for Plaintiffs

The plaintiffs also have asked for service awards of $10,000 for each Named Plaintiff.
Courts often grant named plaintiffs in class action cases an enhanced award, either in the form of
a flat fee or a multiplied amount of their share of the settlement fund.  See In re Nissan Radiator/
Transmission Cooler Litig., No. 10 CV 7493, 2013 WL 4080946, at *15 (holding that an
"incentive" award is common in class actions and serves to compensate plaintiffs for their time
and effort in the pursuit of litigating the claim); compare Capsolas v. Pasta Res. Inc., No. 10 CV

---

[18] The Court observes that the 99% figure does not account for deductions for attorneys'
fees, the administrator's fee, or service awards.  (See id.).

14

5595, 2012 WL 4760910, at *10 (awarding a service award of $20,000 to one named plaintiff and $10,000 for the remaining named plaintiffs), with Velez v. Majik Cleaning Serv., Inc., No. 03 CV 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 22, 2007) (awarding named plaintiffs "twice the amount of the award that other class members will receive").  The general "guiding standard" for such awards is, broadly, "the existence of special circumstances including the personal risk (if any) incurred by the plaintiff[] in becoming and continuing as a litigant . . . [or] any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and, of course, the ultimate recovery."  Gay v. Tri-Wire Eng'g Solutions, Inc., No. 12 CV 2231, 2014 WL 28640, at *13 (E.D.N.Y. Jan. 2, 2014) (quoting Roberts v. Texaco, Inc., 979 F. Supp. 185, 200 (S.D.N.Y. 1997)).

Here, the Named Plaintiffs, in challenging the practices of their employer, risk retaliation and loss of employment, and may also risk discrimination from future employers who learn of the litigation.  See Diaz v. Scores Holding Co., Inc., No. 07 CV 8718, 2011 WL 6399468, at *3 (S.D.N.Y. 2011) (stating that "[i]n FLSA collective actions . . . service awards are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff"); Velez v. Majik Cleaning Serv., No. 03 CV 8698, 2007 WL 7232783, at *7 (stating that "in employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers").

Pursuant to the Settlement Agreement, the three Named Plaintiffs will seek service awards of $10,000 each, for a total of $30,000.  (See Pls.' Mem. at 5).  Previously, the Court

declined to grant preliminary approval of the service awards, noting that "given the absence of information as to the amounts to be received by the other Class Members . . . [and] in the absence of further information, the Court declines to recommend that the service awards be found fair and reasonable." (11/13/2019 R&R at 28).  The parties' letter has now provided information for how the awards for the other class members are to be calculated.  (See 1/9/2020 Ltr. at 2, 3).  The parties have also shared a damages chart for all of the plaintiffs; the chart shows that total damages per plaintiff range from $84 to $22,725, with the majority of damages per plaintiff totaling less than $4,000.  (Id., Ex. A).  Given the additional context for the calculation of Class Members' settlement awards, the Court now respectfully recommends that the service awards be found fair and reasonable.

(d)     Approval of Administrator's Fee

In the Court's first Report and Recommendation, the Court also questioned the projected Claims' Administrator's fee of $20,000, and observed that the chosen administrator is owned in part by plaintiffs' counsel.  (11/13/2019 R&R at 29, n. 12).  In their letter, the parties argue that the fee is necessary to manage a class pool of 100 individuals, including the cost of providing bilingual services.  (1/9/2020 Ltr. at 7).  To support the reasonableness of the fee, plaintiffs have included quotes by two other administrators representing fees of approximately $35,000, reflecting 2013 market rates.  (Id. (citing letter Exhibits B and C)).  Based on the two examples provided by the plaintiffs and this Court's familiarity with the fees charged by claims administrators in other class and collective actions before the Court, the Court finds the requested fee of $20,000 to be reasonable in light of the time and effort needed to distribute the Notice and settlement checks in this matter.

(e)     Approval of Requested Attorney's Fees and Costs

In the Settlement Agreement, counsel for plaintiffs indicate that, in addition to the service

awards, they are seeking an award of attorneys' fees of $66,666, representing 33.33% of the

Settlement Fund before a reduction for costs, and the Claims Administrator's fees of $20,000.

While the final fee award is not being determined at this point, "[c]ounsel must provide a factual

basis for a fee award, typically with contemporaneous time records." Guareno v. Vincent Perito,

Inc., No. 14 CV 1635, 2014 WL 4953746, at *2 (S.D.N.Y. Sept. 26, 2014).  Courts may award

fees based on either a lodestar calculation or a percentage of the settlement fund; however,

Cheeks and Wolinsky require the court to review the attorneys' fee as part of the court's overall

review of the fairness of the settlement.  As the court in Douglas v. Allied Universal Security

Services noted, "[a] fee that is so disproportionate to a plaintiff's recovery raises questions of

whether counsel has taken monies that should be awarded to the employee." 371 F. Supp. 3d at

85.  Thus, "[e]ven where attorneys' fees are sought pursuant to the percentage of the fund

method, 'counsel must submit evidence providing a factual basis for the award.'" Arango v.

Scotts Co., LLC, No. 17 CV 7174, 2019 WL 117466, at *5 (S.D.N.Y. Jan. 7, 2019) (quoting

Wolinsky v. Scholastic Inc., 900 F. Supp. 2d at 336).  A lodestar check is a common way for

courts in this circuit to review the reasonableness of an attorney's requested fee.  See Bhardwhaj

v. Alan's Farmland Ltd., No. 16 CV 7880, 2018 WL 1891313, at *2 (S.D.N.Y. Apr. 5, 2018).

Previously, the Court did not recommend approval of attorney's fees, noting "[a]t this

time, the Court is not in possession of sufficient information to opine on the reasonableness of

the requested fees" as counsel had not provided any records of hours spent on this case, nor

information on billing rates.  (11/13/2019 R&R at 29).  Counsel now represents that the firm has

spent 115.2 hours litigating this case, resulting in a lodestar of $50,977.50.  (1/9/2020 Ltr. at 6).[19]

Given the lodestar, counsel states that a fee of $66,666 represents a "de minimis" 1.3 multiplier

of the lodestar, which does not account for the work counsel has yet to perform in completing

the settlement of this matter.  (Id. at 7).

     The Court observes, as it did in its first Report and Recommendation, that after

subtracting the Claims Administrator's fee and the service awards to the Named Plaintiffs, the

proposed attorneys' fees represent over 44% of the remaining funds.  (See 11/19/2020 R&R at

29).  Although the Court notes that the proposed attorneys' fees, when combined with the

Administrator's fee, appear exceptionally high, the Court nonetheless recommends approval of

the fees.  As the Second Circuit held in Fisher v. SD Prot. Inc., "neither the text nor the purpose

of the FLSA. . . supports proposing a proportionality limit on recoverable attorneys' fees."  948

F.3d at 606.  Furthermore, Fisher rejected the notion that attorneys' fees may be reduced "merely

because it would be disproportionate to the financial interest at stake in the litigation."  Fisher v.

SD Prot. Inc., 948 F.3d. at 603-604.  As such, the Court now recommends a preliminary finding

that the attorney's fees are reasonable.

(f)    The Proposed Notice

     In evaluating the settlement of the collective action brought under the FLSA, the Court

has examined the fairness of the proposed method for distributing the Fund and providing notice.

In Chen v. XpresSpa, the Court expressed concern with the mechanism proposed in that case for

notifying the potential Collective Members.  See Chen v. XpresSpa, 2019 WL 5792315, at *20-

---

[19] The Court calculates that this is lodestar represents a billing rate of approximately $443 per hour, on average.

18

26.   In <u>Chen</u>, it was proposed that the Collective Members, which encompassed employees of the defendant across the nation, be sent a check in the mail, in an amount previously determined by the parties based on the number of weeks the collective member worked.  See <u>Chen v. XpresSpa</u>, 2019 WL 5792315, at *20-26.  The parties in Chen did not contemplate sending a separate notice to the collective members about their opt-in rights.  Instead, by cashing the check, the collective member would be deemed to have opted into the settlement and would release defendants from any further claims.  <u>Id.</u> at *21.  In <u>Chen</u>, a separate Rule 23 class of employees in that case who were located exclusively in New York was to receive the traditional Rule 23 Notice, advising them of the lawsuit, the terms of the proposed settlement, the date of the fairness hearing, and the opportunity to "opt out" of the settlement.  <u>Id.</u> at *20.  Plaintiffs in <u>Chen</u> anticipated that the Court would opine on the fairness of the settlement with respect to the members of the collective action at the same time that the Court conducted the fairness hearing for the Rule 23 class.  Advanced notice of the hearing would only be sent to the Rule 23 class members; the collective members would not be given notice and an opportunity to be heard about the fairness of the settlement.  <u>Id.</u> at *21.  Thus, instead of following the traditional opt-in form procedure generally followed in FLSA collective actions, and being advised of their right to appear at the ultimate fairness hearing, the collective members in <u>Chen</u> would only be given notice after the monies had been sent and the claims released, essentially depriving them of any opportunity to appear at the fairness hearing and to be heard as to their views on the fairness of the amounts they would be receiving and how they were calculated.  <u>Id.</u>

Originally, plaintiffs in this case proposed a similar procedure with respect to the FLSA claims.  In the original Notice, the proposed language to be included in connection with the

settlement checks stated:  "By my endorsement of this check and accepting payment, I opt into

the lawsuit E.D.N.Y. 18-cv-3297, consent to join the Fair Labor Standards Act collective action

in this lawsuit, and release all of my claims as described in the Settlement Agreement, and in the

Notice in this lawsuit."  (First Mot. at 3).  While the due process concerns raised by the

procedure proposed in <u>Chen</u> were somewhat alleviated here because the collective members

appear to be coextensive with the Rule 23 Class Members and will receive notice of the Rule 23

settlement and fairness hearing, the Court declined to endorse a process whereby FLSA claims

can be released and the fairness of a settlement determined before the FLSA collective members

are given an opportunity to opt into the action and appear at the fairness hearing.  (11/19/2020

R&R at 32, 33).  As noted in <u>Chen</u>, it is unclear how the Court has jurisdiction to decide if a

settlement is fair when the affected individuals are not before the Court because they have not

yet opted in.  It is also unclear that such a procedure comports with the <u>Cheeks</u> requirement that

the Court approve a proposed settlement as fair before the claims may be dismissed.  <u>See Cheeks</u>

<u>v. Freeport Pancake House, Inc.</u>, 796 F.3d at 206.[20]

However, in their revised settlement, the parties now propose that in the revised Notice,

"[b]oth Collective Members and Class Members will have 30 days from the date of  [the]

mailing [of the Notice] to submit opt-out requests or object to the settlement . . . [and] [o]nly

those Collective Members who do not opt out will be mailed settlement checks."  (1/9/2020 Ltr.

at 8).  Members who do not opt out will receive a settlement check only *after* final settlement

approval.  (<u>Id.</u>)  The parties contend that this procedure is not only fair but they argue that

---

[20] The Court previously observed that courts approving such settlement structures appear to have endorsed the proposed order submitted by the parties, without addressing the specific concerns raised by this Court.  (<u>See</u> 11/13/2020 R&R at 31, n. 13 (citing cases)).

Collective Members should not be required to file claim forms because, in counsel's experience, it may generate "fear [of] repercussions of taking affirmative steps of participating in a lawsuit." (Id.)  The parties have also added clarifying language to the proposed Notice regarding Members' rights, including information explaining how Members can raise objections to the Settlement.  (See Rev. Notice[21]).

Although the original mechanism proposed for notifying the potential Collective Members, did not, in this Court's view, comport with the policies of the FLSA in that it failed to provide sufficient information to the employees to allow them to make an informed decision and required the employees to release their claims before they were given an opportunity to express their views on the settlement, the Court finds that the updated language provides the Collective Members more information regarding their options, gives them 30 days to object to the settlement before having to accept the checks, allows them to appear at the fairness hearing, and is more aligned with the goals of pursuing due process and fairness.  Accordingly, the Court respectfully recommends that the proposed settlement, as revised, be preliminarily approved at this time.

<u>CONCLUSION</u>

Accordingly, for the reasons stated above, the Court respectfully recommends that the court approve the parties' motion for preliminary approval of the proposed settlement as articulated in the revised Settlement Agreement.

Any objections to this Report and Recommendation must be filed with the Clerk of the

---

[21] Citations to "Rev. Notice" refer to the Revised Notice, attached as Schedule A to the parties' letter, ECF No. 37.

Court within fourteen (14) days.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also

Fed. R. Civ. P. 6(a), (e) (providing the method for computing time).  Failure to file objections

within the specified time waives the right to appeal the District Court's order.  See, e.g., Caidor

v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a

. . . report [and recommendation] operates as a waiver of any further judicial review of the

magistrate [judge's] decision").

      The Clerk is directed to send copies of this Order to the parties either electronically

through the Electronic Case Filing (ECF) system or by mail.

      **SO ORDERED.**

Dated: Brooklyn, New York
      August 7, 2020

                        /s/ Cheryl L. Pollak
                        Cheryl L. Pollak
                        Chief United States Magistrate Judge
                        Eastern District of New York