**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOHN ROSARIO, LUCAS CARRERA, and MARIO ALVAREZ, *on behalf of themselves, FLSA Collective Plaintiffs and the Class*,<br><br>Plaintiffs,<br>v.<br><br>EMZ SOLUTIONS LLC, ARNOLD ROTH, YAAKOV ROTH, and EDWARD FORKASH,<br><br>Defendants. | Case No.: 18-cv-3279 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF ATTORNEYS' FEES, ADMINISTRATION FEES AND REIMBURSEMENT OF EXPENSES**


**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, New York 10011
Telephone: (212) 465-1188
Fax: (212) 465-1181

## TABLE OF CONTENTS

I. INTRODUCTION ..........1

II. CLASS COUNSEL ARE ENTITLED TO A REASONABLE FEE OF APPROXIMATELY ONE-THIRD OF THE SETTLEMENT FUND ..........2

A. The Percentage Method Is the Preferred Method for Awarding Attorneys' Fees in Common Fund Cases in the Second Circuit ..........4

B. The Goldberger Factors Support an Award of Approximately One-third of the Settlement Fund ..........8

1. Class Counsel's Time and Labor ..........8

2. Magnitude and Complexity of the Litigation ..........10

3. Risk of Litigation ..........12

4. Quality of Representation ..........14

5. Fee in Relation to the Settlement ..........16

6. Public Policy Considerations ..........17

III. THE LODESTAR CROSS CHECK FURTHER SUPPORTS AN AWARD TO CLASS COUNSEL OF APPROXIMATELY ONE-THIRD OF THE SETTLEMENT FUND ..........19

IV. CLASS COUNSEL IS ENTITLED TO REIMBURSEMENT OF EXPENSES UNDER THE SETTLEMENT AGREEMENT..........20

V. ADMINISTRATION FEES..........21

VI. CONCLUSION..........21

## TABLE OF AUTHORITIES

CASES Page(s)

*Aboud v. Charles Schwab & Co., Inc.*,
No. 13 Civ. 1581, slip op. at 3 (S.D.N.Y. Jan. 8, 2015) ....................................................4

*A.H. Phillips v. Walling*, 324 U.S. 490 (1945)..................................................................18

*Amador v. Morgan Stanley & Co., LLC*, No. 11 Civ. 4326 (S.D.N.Y.) .............................4

*In re Am. Bank Note Holographics, Inc*., 127 F. Supp. 2d 418 (S.D.N.Y. 2001) ...............6

*Ansoumana v. Gristede's Operating Corp*., 201 F.R.D. 81 (S.D.N.Y. 2001) ..................11

*Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*,
522 F.3d 182 (2d Cir. 2008)...............................................................................................6

*Barrentine v. Arkansas-Best Freight Sys., Inc*., 450 U.S. 728 (1981) ..............................11

*Beckman v. Keybank, N.A.*
293 F.R.D. 481-82 (S.D.N.Y. 2013)..............................................................................1, 10

*Behzadi v. Int'l Creative Mgmt. Partners, LLC*,
No. 14 Civ. 4382, 2015 WL 4210906, at *2-3 (S.D.N.Y. July 9, 2015) ............................4

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) .......................................................3

*In re Boesky Sec. Litig*., 888 F. Supp. 551 (S.D.N.Y. 1995) .............................................19

*Brunson v. City of N.Y.*,
Nos. 94 Civ. 4507, 94 Civ. 5632, 2000 WL 1876910 (S.D.N.Y. Dec. 22, 2000) .............14

*Ceka v. PBM/CMSI Inc*.,
No. 12 Civ. 1711, 2014 WL 6812127, at *1 (S.D.N.Y. Dec. 2, 2014) ...............................4

*City of Detroit v. Grinnell Corp*., 495 F.2d 448 (2d Cir. 1974)........................................12

*Clark v. Ecolab*,
Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198 (S.D.N.Y. May 11, 2010) ..........................................................................................................17

*In re Colgate-Palmolive Co. ERISA Litig.*,
36 F. Supp. 3d 344, 348 (S.D.N.Y. 2014) ............................................................3, 10, 13

*deMunecas v. Bold Food, LLC*,
No. 09 Civ. 440, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ..........................4, 5, 6, 11

*Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326 (1980) ...............................................18

*Diaz v. E. Locating Serv. Inc.*,
No. 10 Civ. 4082, 2010 WL 5507912, at **2, 7 (S.D.N.Y. Nov. 29, 2010) ......................3

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ....................................7

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) ...................................12

*Gaspar v. Pers. Touch Moving, Inc.*,
No. 13 Civ. 8187, 2015 WL 7871036, at *2 (S.D.N.Y. Dec. 3, 2015) ..............................3

*In re Gilat Satellite Networks, Ltd.*,
No. 02 Civ. 1510, 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ...................................16

*Gilliam v. Addicts Rehab. Ctr. Fund*
No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) ............................17

*In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) ...........7, 15

*Goldberger v. Integrated Res. Inc.*, 209 F.3d 43 (2d Cir. 2000) ............................7, 11, 19

*Hernandez v. Immortal Rise, Inc.*, 306 F.R.D.91, 102 (E.D.N.Y. 2015) ...........................4

*Hicks v. Morgan Stanley*,
No. 01 Civ. 10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ............................17, 19

*In re Indep. Energy Holdings PLC Sec. Litig.*,
302 F. Supp. 2d 180 (S.D.N.Y. 2003) ..........................................................................16, 20

*J.I. Case Co. v. Borak*, 377 U.S. 426 (1964) ..................................................................19

*Karpus v. Borelli (In re Interpublic Sec. Litig.)*,
Nos. 02 Civ. 6527, 03 Civ. 1194, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ...............7

*Khait v. Whirlpool Corp.*,
No. 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010)......................................17

*McDaniel v. Cnty. of Schenectady*, 595 F.3d 411 (2d Cir. 2010) ......................................5

*McMahon v. Olivier Cheng Catering & Events, LLC*,

No. 08 Civ. 8713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ....................................5, 18

*Mohney v. Shelly's Prime Steak*,
No. 06 Civ. 4270, 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ....................................17

*Munir v. Sunny's Limousine Serv.*,
No. 13 Civ. 1581, slip op. at 3 (S.D.N.Y. Jan. 8, 2015) ....................................................4

*Parker v. Jekyll & Hyde Entm't Holdings, LLC*,
No. 08 Civ. 7670, 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) ........................................19

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ....................................................19

*In re Polaroid ERISA Litig.*,
No. 03 Civ. 8335, 2007 WL 2116398 (S.D.N.Y. July 19, 2007) ..................................5, 6

*Prasker v. Asia Five Eight LLC*,
No. 08 Civ. 5811, 2010 WL 476009 (S.D.N.Y. Jan. 6, 2010) ..........................................18

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 912 F. Supp. 97 (S.D.N.Y. 1996) ..............11

*Puglisi v. TD Bank, N.A.*,
No. 13 Civ. 637, 2015 WL 4608655, at *1 (E.D.N.Y. July 30, 2015) ...............................3

*In re Ramp Corp. Sec. Litig.*,
No. 05 Civ. 6521, 2008 WL 58938 (S.D.N.Y. Jan. 3, 2008) ......................................5, 6, 7

*In re RJR Nabisco, Inc. Sec. Litig.*,
MDL No. 818, No. 88 Civ. 7905, 1992 WL 210138 (S.D.N.Y. Aug. 24, 1992) .........2, 20

*Sand v. Greenberg*, No. 08 Civ. 7840, 2010 WL 69359 (S.D.N.Y. Jan. 7, 2010) ........5, 19

*Savoie v. Merchs. Bank*, 166 F.3d 456 (2d Cir. 1999).........................................................7

*Sewell v. Bovis Lend Lease, Inc.*,
No. 09 Civ. 6548, 2012 WL 1320124, at *12 (S.D.N.Y. Apr. 16, 2012) ...........................4

*Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) ...............................1, 19

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) ........................................................................6

*In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393 (S.D.N.Y. 1999) ...........................6, 18

*Taft v. Ackermans*, No. 02 Civ. 7951, 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) .........15

*Varljen v. H.J. Meyers & Co.*,
No. 97 Civ. 6742, 2000 WL 1683656 (S.D.N.Y. Nov. 8, 2000) ........................................7

*Velez v. Majik Cleaning Serv., Inc.*,
No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007) .......................................6

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) ...............................1, 20

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) .........................5, 6

*Westerfield v. Wash. Mut. Bank*,
Nos. 06 Civ. 2817, 08 Civ.0287, 2009 WL 5841129 (E.D.N.Y. Oct. 8, 2009) ................17

*Willix v. Healthfirst, Inc.*,
No. 07 Civ. 1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ...............................4, 5, 17

*Yuzary v. HSBC Bank USA, N.A.*,
No. 12 Civ. 3693, 2013 WL 5492998, at *10 (S.D.N.Y. Oct. 2, 2013) ....................2, 3, 20

*Zelster v. Merrill Lynch & Co., Inc.*,
No. 13 Civ. 1531, 2014 WL 4816134, at *9 (S.D.N.Y. Sept. 23, 2014) ............................3

*In re Zyprexa Prods. Liab. Litig.*, 594 F.3d 113, 128 (2d Cir. 2010) .................................3

STATUTES

29 U.S.C. § 216(b) ..........................................................................................................11

Fair Labor Standards Act ............................................................................................ passim

## I. INTRODUCTION

Lee Litigation Group, PLLC ("Class Counsel" or "LLG") respectfully submits this motion for an award of attorneys' fees and expenses in the amount of one-third of the settlement fund (the "Settlement Fund"). This motion is being submitted simultaneously with Plaintiffs' Unopposed Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Motion for Final Approval").[1] Under the settlement, this requested award is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy and good faith of the settlement of the Litigation. Moreover, the outcome of this application does not terminate the settlement or otherwise affect the settlement of the Litigation.

Class counsel has spent more than 139 attorney and paralegal hours prosecuting this case. *See* Declaration of C.K. Lee in Support of Plaintiffs' Motion for Approval of Attorneys' Fees, Administration Fees and Reimbursement of Expenses ("Lee Dec.") ¶7. Multiplying these hours by the hourly rate of each attorney and paralegal results in a lodestar amount of $84,952.50. *Id*. Class Counsel's request for one-third of the Settlement Fund results in a negative multiplier of 0.78x. "Courts regularly award lodestar multipliers of up to **eight times** the lodestar, and in some cases, even higher multipliers". *See, Beckman,* 293 F.R.D. at 481-82 (granting 6.3 multiplier); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (listing nationwide class action settlements where multiplier ranged up to 19.6 times lodestar); *Steiner v. Am. Broad. Co.*, 248 F. App'x

[1] For a detailed account of the factual and procedural background of this case, Class Counsel respectfully refers the Court to the Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement and the supporting Declarations of C.K. Lee.

780, 783 (9th Cir. 2007) (multiplier of 6.85 "falls well within the range of multipliers that courts have allowed"); *Yuzary*, 2013 WL 5492998, at *11 (awarding multiplier of 7.6 in wage and hour misclassification class action); *In re RJR Nabisco, Inc. Sec. Litig*., MDL No. 818, No. 88 Civ. 7905, 1992 WL 210138, at *5-8 (S.D.N.Y. Aug. 24, 1992) (awarding multiplier of 6). Class Counsel's efforts to date have been without compensation, and their entitlement to payment has been wholly contingent upon achieving a positive result. Lee Dec. ¶9. For the reasons set forth below, Class Counsel respectfully submits that the attorneys' fees and expenses reimbursement they seek are fair and reasonable under the applicable legal standards, and should be awarded in light of the contingency risk undertaken and the result achieved in this case.

## II. CLASS COUNSEL IS ENTITLED TO A REASONABLE FEE OF APPROXIMATELY ONE-THIRD OF THE SETTLEMENT FUND.

Class Counsel is entitled to reasonable attorneys' fees to compensate for their work in recovering unpaid wages on behalf of the class. The request for approximately one-third of the Settlement Fund, less than the accrued lodestar, is reasonable and within the range approved by courts in similar cases.

The Settlement Agreement, which was preliminarily approved by the Court on December 31, 2020, provides that Plaintiffs' Counsel will apply for up to one-third of the Fund as attorneys' fees, plus reimbursement of reasonable litigation costs and expenses (Settlement Agreement § 3.2). In addition, the Court-approved Notices that were sent to all Collective and Class Members explained that Plaintiffs' counsel would apply for one-third of the Fund, as attorneys' fees, plus costs and expenses.

No Class Member has objected to the requested attorneys' fees or expense reimbursement. The lack of objections to Class Counsel's fee and cost reimbursement

request is some indication of the reasonableness of the requested award and weighs in favor of its approval. *Zelster v. Merrill Lynch & Co., Inc*., No. 13 Civ. 1531, 2014 WL 4816134, at *9 (S.D.N.Y. Sept. 23, 2014) (lack of objections to class counsel's request for one third of the fund "provide[d] support for Class Counsel's fee request"); *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 WL 5492998, at *10 (S.D.N.Y. Oct. 2, 2013) (same); see also *Diaz v. E. Locating Serv. Inc*., No. 10 Civ. 4082, 2010 WL 5507912, at **2, 7 (S.D.N.Y. Nov. 29, 2010) (awarding class counsel one third of the settlement fund where no class members objected to class counsel's request for fees and costs.)

The Court should award attorneys' fees as a percentage of the total fund made available to the Class. When counsel's efforts result in the creation of a common fund, counsel is "entitled to a reasonable attorney's fee from the fund *as a whole*." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (emphasis added); *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 348 (S.D.N.Y. 2014) (Schofield, J.) ("Under the percentage method, the fee is a reasonable percentage of the total value of the settlement fund created for the class."). Recovery of fees based on the entire fund "permits litigants or lawyers who recover a common fund for the benefit of persons other than themselves to obtain reasonable attorney's fees out of the fund, thus spreading the cost of the litigation to its beneficiaries." *In re Zyprexa Prods. Liab. Litig.*, 594 F.3d 113, 128 (2d Cir. 2010).

The request for one-third of the Gross Settlement Amount is also within the range approved by courts in wage and hour class action cases. *See, e.g.*, *Gaspar v. Pers. Touch Moving, Inc.*, No. 13 Civ. 8187, 2015 WL 7871036, at *2 (S.D.N.Y. Dec. 3, 2015) ("Fee awards representing one third of the total recovery are common in this District"); *Puglisi v. TD Bank, N.A.*, No. 13 CIV. 637, 2015 WL 4608655, at *1 (E.D.N.Y. July 30, 2015)

(approving attorneys' fees award of one-third of the settlement fund in class and collective action case); *Behzadi v. Int'l Creative Mgmt. Partners, LLC*, No. 14 Civ. 4382, 2015 WL 4210906, at *2-3 (S.D.N.Y. July 9, 2015) (same); *see also Munir v. Sunny's Limousine Serv., Inc.*, No. 13 Civ. 1581, slip op. at 3 (S.D.N.Y. Jan. 8, 2015) (awarding attorneys' fees award of $1,166,666.67, equaling one-third of the settlement fund, in case brought on behalf of drivers misclassified as independent contractors); *Aboud v. Charles Schwab & Co., Inc.*, No. 14 Civ. 2712 (S.D.N.Y. Oct. 29, 2014) (granting award of attorneys' fees in the amount of $1,266,066.67 equaling one-third of the fund in a wage and hour case involving a $3.7 million fund); *Amador v. Morgan Stanley & Co., LLC*, No. 11 Civ. 4326 (S.D.N.Y.)) (awarding attorneys' fees of one-third of the fund in nationwide wage and hour off-the-clock case involving $4.2 million fund); *Davis*, 827 F. Supp. 2d at 183, 186 (granting attorneys' fees in the amount of $1.4 million, equaling one-third of the fund in a wage and hour misclassification case involving a $4.2 million fund); *Ceka v. PBM/CMSI Inc.*, No. 12 Civ. 1711, 2014 WL 6812127, at *1 (S.D.N.Y. Dec. 2, 2014) (awarding attorneys of one-third of the settlement fund in wage and hour class action alleging off-the-clock claims); *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *12 (S.D.N.Y. Apr. 16, 2012 (same).

### A. The Percentage Method Is the Preferred Method for Awarding Attorneys' Fees in Common Fund Cases in the Second Circuit.

In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award. *Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 102 (E.D.N.Y. 2015); *Yuzary*, 2013 WL 5492998, at *9; *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *6 (E.D.N.Y. Feb. 18, 2011); *deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *8 (S.D.N.Y. Aug. 23, 2010). Where relatively small claims

can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill that role must be adequately compensated for their efforts. *deMunecas*, 2010 WL 3322580, at *8; *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328, at *7 (S.D.N.Y. Mar. 3, 2010); *Sand v. Greenberg*, No. 08 Civ. 7840, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010) (statutory attorneys' fees are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel"). If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *Willix*, 2011 WL 754862, at *6; *McMahon*, 2010 WL 2399328, at *7; *Sand*, 2010 WL 69359, at *3 ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected."). Although there are two ways to compensate attorneys for successful prosecution of statutory claims, the lodestar method and the percentage of the fund method, *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010), the trend in this Circuit is to use the percentage of the fund method in common fund cases like this one. *Id.*; *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 121 (2d Cir. 2005); *deMunecas*, 2010 WL 3322580, at *8. There are several reasons that courts prefer the percentage method. First, the percentage method "directly aligns the interests of the class and its counsel" because it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made. *Wal-Mart Stores*, 396 F.3d at 122 (internal quotation marks omitted); *In re Ramp Corp. Sec. Litig*., No. 05 Civ. 6521, 2008 WL 58938, at *2 n.2 (S.D.N.Y. Jan. 3, 2008); *In re Polaroid ERISA Litig*., No. 03 Civ. 8335, 2007 WL 2116398, at *2 (S.D.N.Y 4 July 19,

2007); *Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007).

The percentage method is also closely aligned with market practices because it "mimics the compensation system actually used by individual clients to compensate their attorneys." *In re Sumitomo Copper Litig*., 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999); see also *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini,* 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (the percentage method "is consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients"); *In re Am. Bank Note Holographics, Inc.,* 127 F. Supp. 2d 418, 432 (S.D.N.Y. 2001) (the court should "determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order"). This rationale is consistent with the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 522 F.3d 182, 191 (2d Cir. 2008), where the Court held that a "presumptively reasonable fee" takes into account what a "reasonable, paying client" would pay. While *Arbor Hill* is not controlling because it does not address a common fund fee petition, its reasoning supports use of the percentage of the fund method. *Willix,* 2011 WL 754862, at *7; *deMunecas*, 2010 WL 3322580, at *9.

Second, the percentage of the fund method promotes early resolution. It "provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores*, 396 F.3d at 122 (internal quotation marks omitted); see also *In re Ramp Corp. Sec. Litig.,* 2008 WL 58938, at *2 n.2; *In re Polaroid ERISA Litig*., 2007 WL 2116398, at *2; *Velez*, 2007 WL 7232783, at *7. The percentage method discourages plaintiffs' lawyers

from running up their billable hours, one of the most significant downsides of the lodestar method. See *Savoie v. Merch. Bank*, 166 F.3d 456, 460-61 (2d Cir. 1999) ("It has been noted that once the fee is set as a percentage of the fund, the plaintiffs' lawyers have no incentive to run up the number of billable hours for which they would be compensated under the lodestar method.") (citation omitted); *Karpus v. Borelli (In re Interpublic Sec. Litig.),* Nos. 02 Civ. 6527, 03 Civ. 1194, 2004 WL 2397190, at *11 (S.D.N.Y. Oct. 26, 2004) (the percentage method is "much simpler").

Third, the percentage method preserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Id.* (*quoting Savoie v. Merchs. Bank*, 166 F.3d 456, 461 n.4 (2d Cir. 1999)). The "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits." *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 48-49 (2d Cir. 2000); see also *In re Ramp Corp. Sec. Litig*., 2008 WL 58938, at *2 n.2; *In re EVCI Career Colls. Holding Corp. Sec. Litig*., No. 05 Civ. 10240, 2007 WL 2230177, at *16 (S.D.N.Y. July 27, 2007). While courts still use the lodestar method as a "cross check" when applying the percentage of the fund method, courts are not required to scrutinize the fee records as rigorously. *Goldberger,* 209 F.3d at 50; *see In re Global Crossing Sec. & ERISA Litig*., 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (using an "implied lodestar" for the lodestar cross check); *Varljen v. H.J. Meyers & Co*., No. 97 Civ. 6742, 2000 WL 1683656, at *5 (S.D.N.Y. Nov. 8, 2000) (using an "unexamined lodestar figure" for the lodestar cross check).

Because the proposed legal fees is 0.78x, or less than, the actual lodestar incurred, within the range approved in this Circuit and District, Plaintiffs' counsel's legal fees are fair.

**B. The *Goldberger* Factors Support an Award of Approximately One-third of the Settlement Fund.**

Reasonableness is the touchstone for determining attorneys' fees. In *Goldberger*, the Second Circuit articulated six factors for courts to consider in determining the reasonableness of fee applications:

(1) the time and labor expended by counsel;
(2) the magnitude and complexities of the litigation;
(3) the risk of litigation;
(4) the quality of representation;
(5) the requested fee in relation to the settlement; and
(6) public policy considerations.

209 F.3d at 50 (quotation marks omitted). All of the *Goldberger* factors weigh in favor of granting approval of Class Counsel's fee application.

**1. Class Counsel's Time and Labor**

Class Counsel spent significant effort to achieve the $200,000 settlement. From the outset, Class Counsel thoroughly investigated the claims and defenses, focusing on the underlying merits of the class members' claims, the damages to which they were entitled, and the propriety of class certification. See Declaration of C.K. Lee in Support of Plaintiffs' Unopposed Motion for Certification of the Settlement Class, at ¶8. Through discovery, Class Counsel obtained, reviewed, and analyzed comprehensive wage and hour records with respect to the class members. *Id*. at ¶9. This comprehensive discovery enabled Class Counsel to perform a class-wide damage assessment.

Plaintiffs John Rosario, Lucas Carrera, and Mario Alvarez filed a Complaint against

Defendants on June 5, 2018, which was later amended on July 11, 2018 ("Amended Complaint"). Specifically, Plaintiffs alleged that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and/or the New York Labor Law ("NYLL") Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations by, *inter alia*: (i) failing to pay proper minimum wages due to time shaving and (ii) failing to meet the New York Labor Law's requirement on wage statements and wage and hour notices for all direct support professionals and shift supervisors.

On December 31, 2020, the Court granted preliminary approval of the class settlement. Since the commencement of this action, the parties have engaged in extensive settlement negotiations. As the litigation progressed through document exchange, the parties began to explore the possibilities and parameters for a class-wide settlement. In addition to numerous informal telephone conferences for settlement, the parties engaged in an all-day mediation with Raymond Nardo, Esq. of the E.D.N.Y. Mediation Program on February 28, 2019, at which the parties reached a settlement in principle. During the months thereafter, the parties continued negotiating the terms of the class settlement and reached an agreement on all terms, which they memorialized in the Settlement Agreement, executed on May 28, 2019.

Class Counsel subsequently prepared and submitted a preliminary approval motion, which was filed on May 29, 2019 and denied approval on December 20, 2019. Following the parties' submission of a supplemental letter brief on January 9, 2020, on January 14, 2020, the Court ordered the Parties to submit a renewed motion for preliminary approval, which was filed on May 27, 2020. The Court issued an order granting preliminary approval

of the revised class settlement on December 31, 2020. In performing all of the aforementioned tasks, Class Counsel spent over 139 hours of attorney and paralegal time for an aggregate lodestar of more than $84,952.50. Lee Dec. at ¶7. These hours are reasonable for a case such as this and were compiled from contemporaneous time records maintained by each attorney and paralegal participating in the case. *Id*.

Moreover, the requested fee is not based solely on time and effort already expended; rather, it is also meant to compensate Class Counsel for time that will be spent administering the settlement in the future. See *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d at 347 (noting that time records submitted with fee petitions "exclude time spent preparing and arguing the motion to approve the settlement and attorneys' fees, and time that will be spent administering the settlement"); *Beckman*, 293 F.R.D. at 482 ("Class Counsel is often called upon to perform work after the final approval hearing, including answering class member questions, answering questions from the claims administrator, and negotiating and sometimes litigating disagreements with defendants about administering the settlement and distributing the fund."). In Class Counsel's experience, administering class settlements require a substantial and ongoing commitment. For example, since the Notices were mailed out, Class Counsel has responded to several Class Members' questions about the terms of the settlement and the amount of their settlement awards. As is common in wage and hour class actions, Class Counsel expects to respond to Class Member inquiries after final approval, especially after checks are issued.

**2. Magnitude and Complexity of the Litigation.**

The size and difficulty of the issues in a case are significant factors to be considered in making a fee award. *Goldberger*, 209 F.3d at 50; *In re Prudential Sec. Inc. Ltd. P'ships*

*Litig*., 912 F. Supp. 97, 100-01 (S.D.N.Y. 1996). Courts have recognized that wage and hour cases involve complex legal issues. "FLSA claims typically involve complex mixed questions of fact and law…These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings." *Barrentine v. Arkansas-Best Freight Sys*., Inc., 450 U.S. 728, 743 (1981). Among FLSA cases, the most complex type is the "hybrid" action brought here, where state wage and hour violations are brought as an "opt out" class action pursuant to Federal Rule of Civil Procedure 23 in the same action as the FLSA "opt in" collective action pursuant to 29 U.S.C. § 216(b). Because the same set of operative facts is being applied and analyzed under both statutory frameworks, justice is served and consistency and efficiency are achieved by having the litigation in one forum. See *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 89 (S.D.N.Y. 2001). A trial on the merits would involve significant factual development. Plaintiffs' counsel are experienced and realistic and understand that the resolution of liability issues, the outcome of the trial and the inevitable appeals process are inherently uncertain in terms of outcome and duration. These mixed factual and legal questions support approval of Class Counsel's attorneys' fee request. See *deMunecas*, 2010 WL 3322580, at *7-8 (awarding attorneys' fees of 33% of the common fund in wage and hour case involving mixed questions of law and fact).

This case hinged on mixed questions of fact and law. In particular, the Parties disputed the facts surrounding the validity of Defendants' practice of allowing the foreman to fill out Class Members' time sheets, automatically deducting meal breaks and rounding hours. These are highly complex and fact-specific issues as Defendants deny all wrongdoing and claim that Plaintiffs and Class Members received complete and timely

payment of all wages due, were not required to work during their meal breaks or off-the-clock without compensation, and understood how they were being compensated at all times.

These unresolved factual and legal questions support approval of Class Counsel's attorneys' fee request. *See id.* (size and difficulty of case, including mixed questions of fact and law, supported attorneys' fee award of one third of the fund); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005) (mixed questions of fact and law supported court's award of attorneys' fees representing approximately 40% of the common fund).

**3. Risk of Litigation.**

The risk of litigation is also an important factor in determining a fee award. Uncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award. *City of Detroit v. Grinnell Corp*., 495 F.2d 448, 470 (2d Cir. 1974), abrogated by *Goldberger*, 209 F.3d 43 (2d Cir. 2000). "[D]espite the most rigorous and competent of efforts, success is never guaranteed." *Id.* at 471. "No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success." *Id* at 470. "Risk should be considered 'as of when the case is filed.'" *In re Colgate-Palmolive Co. ERISA Litig*., 36 F. Supp. 3d at 351 (quoting *Goldberger*, 209 F.3d at 55).

Class Counsel undertook to prosecute this action without any assurance of payment for its services, litigating this case on a wholly contingent basis in the face of tremendous risk. Class and collective wage and hour cases of this type are, by their very nature,

complicated and time-consuming. Lawyers undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make an enormous investment of time, energy, and resources. Due also to the contingent nature of the customary fee arrangement, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. Class Counsel stood to gain nothing in the event the case was unsuccessful.

Moreover, the circumstances of this case presented hurdles to a successful recovery as Plaintiffs' claims are highly fact specific and require a plaintiff-friendly interpretation of the law. Each of the claims of Plaintiffs and Class Members carry significant risk.

Plaintiffs wish to avoid the risk of further litigating their claims. There is an inherent risk in going to trial of being unable to establish any liability. A trial would involve significant risks to Plaintiffs in light of the defenses available to Defendants, as cases involving time shaving claims are rarely proven by relevant employment documents alone. The inability of the time and pay records to prove liability leaves this claim open to interpretation, and in order for Plaintiffs to prevail, their claims would need to be substantiated by third-party witnesses – a process that would be both time consuming and complicated, considering the size of the class. At the same time, Defendants contend that Plaintiffs and Class Members took their meal breaks every shift and were properly compensated for all hours worked.

If Defendants were to succeed at trial in establishing that Plaintiffs and the class were properly paid for all hours worked, Plaintiffs and class members would run the risk of obtaining less than the payment being received in the settlement, if anything at all. We believe that even if Plaintiffs were to obtain a judgment greater than $200,000 in the future,

likely more than two years given the jury backlog caused by the COVID-19 Pandemic, any additional amounts would be significant risk to collection since it is already unclear if Defendants could withstand a greater judgment. Considering the risks of ongoing litigation, the defenses available to Defendants, and the inability of Defendants to withstand a greater judgment, the $200,000 settlement amount provides Plaintiffs and the Class with a recovery that is both fair and reasonable. Particularly, given the economic complications resulting from the current Coronavirus Pandemic, obtaining any payment on a class settlement is a complete victor and puts money in the hands of workers who need it.

This factor therefore weighs in favor of granting the requested fees. *See*, *e.g.*, *Brunson v. City of N.Y.*, Nos. 94 Civ. 4507, 94 Civ. 5632, 2000 WL 1876910, at *4 (S.D.N.Y. Dec. 22, 2000) (where class counsel "faced significant obstacles…verifying…tasks performed by individual plaintiffs," class counsel was entitled to a premium).

**4. Quality of Representation.**

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007) (citing *In re Global Crossing*, 225 F.R.D. at 467). The recovery obtained was substantial. Defendants agreed to pay a total of $200,000 to settle this litigation. Class members that do not opt-out of the settlement will receive a percentage of the Settlement Fund.

Under the formula created by the settlement, class members will be paid a proportionate share of the Settlement Fund based on the following formula. After the allocation of court approved attorneys' fees, administration fees, service awards, court

approved litigation costs and out of pocket expenses, the amount remaining from the Fund ("Net Settlement Fund") will be divided among Class Members. Each Class Member who does not opt out of the settlement ("Qualified Class Member") will receive a proportional share of the Net Settlement Fund based on the number of weeks he or she was employed by Defendants (as defined in the Settlement Agreement) during the Class Period, paid out of the Fund. Settlement Agreement § 3.5. All Class Members will receive one point for each week they worked during the Relevant Period. The Claims Administrator will then divide the total number of points for each Qualified Class Member by the total number of points for all Qualified Class Members to determine each Qualified Class Member's portion of the Net Settlement Fund. *Id.* The Claims Administrator will then multiply each Qualified Class Member's portion of the Net Settlement Fund by the Net Settlement Fund to determine the amount to be paid to each Qualified Class Member. *Id*.

Class members shall have one hundred and twenty (120) days to cash their checks. After such time, any checks that have not been cashed shall be void and the monies returned to the Net Settlement Fund for redistribution in a second mailing to those Class Members who endorsed and deposited their initial settlement check on a *pro rata* basis, at Plaintiffs' Counsel's discretion. Any remaining amount after one hundred and twenty (120) days have passed from the last mailing of settlement checks, shall be applied to a *cy pres* charitable donation determined by Plaintiffs' Counsel. Lee Decl., Ex A, (Settlement Agreement) § 3.1(E).

Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement is a good deal for the class. The settlement amount will be available to class members without the uncertainty and delay of trial.

Class Counsel has substantial experience prosecuting large-scale wage and hour class and collective actions. Lee Dec. ¶5. Class Counsel's skill and experience were directly responsible for the favorable settlement and weigh in favor of granting the requested fees.

**5. Fee in Relation to the Settlement.**

Courts also consider the size of the settlement to ensure that the percentage awarded does not constitute a "windfall." *See*, e.g., *In re Gilat Satellite Networks, Ltd*., No. 02 Civ. 1510, 2007 WL 2743675, at *16 n.41 (E.D.N.Y. Sept. 18, 2007). "[T]he percentage used in calculating any given fee award must follow a sliding-scale and must bear an inverse relationship to the amount of the settlement." *Id.* (quoting *In re Indep. Energy Holdings PLC Sec. Litig*., No. 00 Civ. 6689, 2003 WL 22244676, at *6 (S.D.N.Y. Sept. 29, 2003)) (internal quotation marks omitted). Where the size of the fund is relatively small, courts typically find that requests for a greater percentage of the fund are reasonable. *See*, e.g., *In re Gilat Satellite Networks, Ltd*., 2007 WL 2743675, at *16 n.41 (finding a 30% fee would not constitute a windfall "given the modest size of the [$20 million] settlement").

The size of the $200,000 maximum settlement weighs in favor of granting the requested fee award of approximately one-third of the Settlement Fund. *See*, e.g., *Mohney v. Shelly's Prime Steak*, No. 06 Civ. 4270, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (awarding 33% of $3,265,000 fund in FLSA and NYLL tip misappropriation case). Courts in this Circuit have routinely granted requests for approximately one-third of the fund in cases with settlement funds substantially larger than this one. *See*, e.g., *Willix*, 2011 WL 754862,at *6 (awarding class counsel one-third of $7,675,000 settlement fund in FLSA and NYLL wage and hour action); *Clark*, 2010 WL 1948198, at *8-9 (awarding class

counsel 33% of $6 million settlement fund in FLSA and multi-state wage and hour case); *Khait v. Whirlpool Corp*., No. 06 Civ. 6381, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (awarding class counsel 33% of $9.25 million settlement fund in FLSA and multi-state wage and hour case); *Westerfield v. Wash. Mut. Bank,* Nos. 06 Civ. 2817, 08 Civ.0287, 2009 WL 5841129, at *4-5 (E.D.N.Y. Oct. 8, 2009) (awarding 30% of $38 million fund in nationwide overtime suit).

This is true even though "[a]s the size of the settlement fund increases, the percentage of the fund awarded as fees often decreases so as to prevent a windfall to plaintiffs' attorneys." *Hicks v. Morgan Stanley*, No. 01 Civ. 10071, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) (internal quotation marks omitted). A fee of approximately 33% of the Settlement Fund is reasonable and "consistent with the norms of class litigation in this circuit." *Willix*, 2011 WL 754862, at *7 (*quoting Gilliam v. Addicts Rehab. Ctr. Fund,* No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008)).

**6. Public Policy Considerations.**

Public policy considerations weigh in favor of granting Class Counsel's requested fees. In rendering awards of attorneys' fees, "the Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig*., 74 F. Supp. 2d at 399. The FLSA and NYLL are remedial statutes designed to protect the wages of workers. *See A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective–ensuring that every employee receives "a fair day's pay for a fair day's work") (internal quotation marks omitted). Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by

"private attorneys general," attorneys who fill the private attorney general role must be adequately compensated for their efforts. *Willix*, 2011 WL 754862, at *6; *deMunecas*, 2010 WL 3322580, at *8; *McMahon*, 2010 WL 2399328, at *7. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *Willix*, 2011 WL 754862, at *6; *deMunecas*, 2010 WL3322580, at *8; *McMahon*, 2010 WL 2399328, at *7. Adequate compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of those statutes. *Willix*, 2011 WL 754862, at *6; *deMunecas*, 2010 WL 3322580, at *8; *McMahon*, 2010 WL 2399328, at *7; see also *Sand*, 2010 WL 69359, at *3 ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.") Courts have recognized that fee awards in cases like this serve the dual purposes of encouraging "private attorneys general" to seek redress for violations and discouraging future misconduct of a similar nature. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980); *Khait*, 2010 WL 2025106, at *8; *Prasker v. Asia Five Eight LLC*, No. 08 Civ. 5811, 2010 WL 476009, at *6 (S.D.N.Y. Jan. 6, 2010). Class actions are also an invaluable safeguard of public rights. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985); *J.I. Case Co. v. Borak*, 377 U.S. 426, 433-34 (1964). Particularly where, as here, the settlement fund is relatively small, an award of attorneys' fees ensures that "plaintiffs' claims [will] likely . . . be heard." *Frank*, 228 F.R.D. at 189. If courts denied sufficient attorneys' fees "no attorneys . . . would likely be willing to take on . . . small-scale class actions[.]" *Id.*; *deMunecas,* 2010 WL 3322580, at *8; *Sand*, 2010 WL 69359, at *3.

## III. THE LODESTAR CROSS CHECK FURTHER SUPPORTS AN AWARD TO CLASS COUNSEL OF APPROXIMATELY ONE-THIRD OF THE SETTLEMENT FUND

Following *Goldberger*, the trend in the Second Circuit has been to apply the percentage method and loosely use the lodestar method as a "baseline" or as a "cross check." *Goldberger*, 209 F.3d at 50. The Second Circuit "encourages the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage." *Id.*; *see also Parker*, 2010 WL 532960, at *2. As part of the cross check, the lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate. *Hicks*, 2005 WL 2757792, at *8. Courts then consider whether a multiplier is warranted based on factors, such as: (1) the contingent nature of the expected compensation for services rendered; (2) the consequent risk of non-payment viewed as of the time of filing the suit; (3) the quality of representation; and (4) the results achieved. *In re Boesky Sec. Litig.*, 888 F. Supp. 551, 562 (S.D.N.Y. 1995). *See also Goldberger*, 209 F.3d at 47; *Savoie*, 166 F.3d at 460; *Parker*, 2010 WL 532960, at *2. Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers. See *Beckman*, 293 F.R.D. at 481-82 (granting 6.3 multiplier); *see also Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (multiplier of 6.85 "falls well within the range of multipliers that courts have allowed"); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (listing nationwide class action settlements where multiplier ranged up to 19.6 times lodestar); *Yuzary*, 2013 WL 5492998, at *11 (awarding multiplier of 7.6 in wage and hour misclassification class action); *In re RJR Nabisco, Inc. Sec. Litig.*, MDL No. 818, No. 88 Civ. 7905, 1992 WL 210138, at *5-8 (S.D.N.Y. Aug. 24, 1992) (awarding multiplier of 6).

In calculating the lodestar for cross check purposes, the "hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. Rather, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case…" *Id.* Class Counsel spent over 139 hours litigating and settling this matter. Lee Dec. ¶ 7. The time spent by Class Counsel is described in the Declaration of C.K. Lee and Class Counsel's contemporaneous time records attached thereto. *Id.* at ¶ 7; Ex. A (Time Records). The hours worked by Class Counsel result in a lodestar of more than $84,952.50. *Id.* Assuming that LLG accrued $84,952 in lodestar, the lodestar multiplier would be negative. Class Counsel believes that their request for approximately 0.78x their lodestar would be reasonable given the excellent results obtained, the work that was done to effect such settlement over several years, and the uncertainty in undertaking the risk of this lawsuit.

## IV. CLASS COUNSEL IS ENTITLED TO REIMBURSEMENT OF EXPENSES UNDER THE SETTLEMENT AGREEMENT

Under the terms of the Settlement Agreement, the attorneys' fees award sought by Class Counsel does not include expenses. *See* Settlement Agreement ¶ 3.2. "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients." *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (internal quotation marks omitted). Here, Class Counsel's actual expenses were incidental and necessary to the representation of the Class. Lee Dec. ¶8. These expenses and costs include filing fees, transcripts, and fees related to mediation. *Id.* Based on expenses accrued, Plaintiffs respectfully request that the Court approve Counsel's

application for reimbursement of expenses of $1,042.10, to be paid from the Settlement Fund.

## V. ADMINISTRATION FEES

Advanced Litigation Strategies, LLC ("ALS") is an administration company under common control of Class Counsel. ALS has acted as the Settlement Administrator in this lawsuit and has disseminated Class and Collective Notices to Class Members, performed calculations of awards to each Class Member, and maintained correspondences with Class Members. *See* Declaration of Chris Pikus, attached as Exhibit B to the Lee Declaration.

The Parties agreed to fees not to exceed $20,000 (to be paid out of the Settlement Fund) to the Settlement Administrator, which is consistent with prevailing market rates. ALS has extensive experience in providing court-approved notice of class actions and administering various types of class action settlements.

## VI. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Approval of Attorneys' Fees and Reimbursement of Expenses.

Dated: April 20, 2021

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**

By: */s/ C.K. Lee*
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs, FLSA Collective Plaintiffs and the Class*